UNITED STATES of America, Plaintiff,

v.

Conrad Louis GERMAIN et al., Defendants.

Crim. No. 74–113.

United States District Court, S. D. Ohio, E. D.

Sept. 29, 1975.

Albert R. Ritcher, Asst. U. S. Atty., Columbus, Ohio, for plaintiff.

Robert C. McDaniel, Hollywood, Cal., Laurence E. Sturtz, Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

In an indictment filed on December 4, 1974, defendants Conrad Louis Germain and Robert William Kane were charged with ten counts of knowingly using the mails for the carriage and delivery of obscene materials in violation of Title 18, United States Code, Section 1461. This matter is now before the Court upon the motions of defendants (1) for inspection of the minutes of the grand jury or, alternatively for a statement of matters occurring before the grand jury; (2) for discovery and inspection pursuant to Rule 16, Fed.R.Crim.P.; (3) for a bill of particulars pursuant to Rule 7(f), Fed.R.Crim.P.; (4) for a transfer of these proceedings pursuant to Rule 21(b), Fed.R. Crim.P.; and (5) for a dismissal of the indictment. Each of these motions is considered below.

### Motion for Inspection of Grand Jury Minutes

In this motion defendants seek an order pursuant to Rule 6(e),[1] Fed.R.Crim.P., per-

---

1. Rule 6(e) states as follows:

 *Secrecy of Proceedings and Disclosure.* Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dis-

mitting them to inspect the minutes of the grand jury or, alternatively, for a statement by the prosecutor who presented the case to the grand jury as to matters which occurred before that grand jury. The Court notes at the outset that counsel for the government has represented that the minutes of the grand jury were not recorded; hence the inquiry presented is whether the government should be required to submit a statement to the defendants disclosing what took place before the grand jury. Specifically, the defendants want the government to state:

1. Whether the grand jury was instructed or advised with respect to the standards and criteria for judging the obscenity of each of the advertising brochures alleged in each count of the indictment and, if the answer is in the affirmative, supply a copy of the instructions or the substance of the said instructions if a copy is not available.

2. Whether the grand jury was instructed or advised to determine the alleged obscenity of the advertising brochures by supplying the community standards of the nation as a whole.

3. Whether the grand jury was instructed or advised to determine the alleged obscenity of the advertising brochures by applying the standards of the Southern District of Ohio, Eastern Division.

4. Whether the grand jury was instructed or advised that the advertising brochures could not be condemned as obscene unless found to be utterly without social importance or value.

5. Whether the grand jury was instructed or advised that the advertising brochures could not be condemned as obscene unless they lacked serious literary, artistic, political or scientific value.

6. Whether the grand jury was advised that an indictment containing the same eight counts as those contained in the indictment herein had previously been returned by a grand jury in the Southern District of Ohio, Eastern Division.

7. Whether the grand jury was advised that the proceedings under the prior indictment had been transferred to the Central District of California, and the indictment there dismissed at the behest of the government.

8. Whether the original envelopes and advertising brochures alleged in the indictment herein were actually presented and shown to the grand jury which returned this indictment.

9. Whether any evidence was presented to the grand jury that the advertising brochures referred to in the indictment complied, or failed to comply, with the provisions of 39 U.S.C. § 3010 and 18 U.S.C. §§ 1735 and 1737.

In an affidavit submitted in support of the motion, defendants' counsel states that the above information is necessary in order to ascertain whether the grand jury was advised as to the appropriate standards for obscenity and whether any evidence was presented to it which could justify the return of an indictment against defendants. The Court believes that these grounds do not provide a sufficient basis for the motion and that it must fail.

The beginning point for a determination of the propriety of disclosure of grand jury proceedings is the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *United States v. Proctor & Gamble Company*, 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077, 1081 (1958). When disclosure has been permitted it has been done "dis-

miss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons.

cretely and limitedly," *id.* at 683, 78 S.Ct. at 986, 2 L.Ed.2d at 1082, and upon the showing of a particularized need. Balanced against this policy of secrecy has been the Supreme Court's recognition that "disclosure, rather than suppression, of relevant material ordinarily promotes the proper administration of justice." *Dennis v. United States*, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973, 983 (1966). In *Dennis* the Supreme Court held that defendants had demonstrated a "particularized need" upon a showing that: (1) the grand jury testimony had been taken seven years before the trial; (2) the witnesses involved were key witnesses, essential to the government's case; (3) the testimony of the witnesses was largely uncorroborated and dealt with oral statements; (4) two of the four witnesses were accomplices and a third had reasons to be hostile toward defendants; and (5) one of the witnesses admitted being mistaken about significant dates in earlier statements. Defendants herein make no such showing of particularized need. Rather, they appear to rely simply on the fact that they do not know what transpired before the grand jury and to do so would be helpful to them. Further, they seem to attack the grand jury's finding of probable cause and the sufficiency of the evidence before the grand jury. Neither of these provides support for disclosure. It is well settled that the return of an indictment by a grand jury is a conclusive determination of probable cause. See *Ex parte United States*, 287 U.S. 241, 250, 53 S.Ct. 129, 131, 77 L.Ed. 283, 287 (1932); *United States v. Kysar*, 10 Cir., 459 F.2d 422, 424 (1972). A court will not look behind an indictment, proper upon its face, to determine if it is based on inadequate or incompetent evidence. As the Supreme Court stated in a landmark case in this area:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always in-

sist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. . . . An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.

*Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397, 402 (1956). In short, the accompanying affidavit presents neither facts nor a legal rationale justifying disclosure. A strong presumption of regularity is accorded grand jury proceedings, see *United States v. Weber*, 197 F.2d 237 (2d Cir. 1952), *cert. denied* 344 U.S. 834, 73 S.Ct. 42, 97 L.Ed. 649 (1952), and the Court believes this is especially appropriate here; if defendants' demand for disclosure were upheld here, the Court can think of few situations in which it would not be proper. For the above reasons, defendants' motion for disclosure of the grand jury proceedings is denied.

### *Motion for Discovery and Inspection*

Defendants have moved for leave to inspect and copy some nineteen items consisting of communications, documents, and other tangible objects. This material may be classified for the sake of convenience into three distinct groups. First, there is what can be termed *Brady* type material, see *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), exemplified by the following requests:

1. All evidence in the possession of the United States of America, the plaintiff herein, or any of its attorneys, agents, servants, or employees, which may be material or favorable to the defendants.

2. All evidence coming into the possession of the United States of America, the plaintiff herein, or any of its attorneys, agents, servants, or employees, which may come into the possession of the Government prior to trial and subsequent to the motion herein, which may be material or favorable to the defendants.

4. Any statements of witnesses, or records produced by witnesses, relative to the defendants, not proposed to be called by the Government which tend to exculpate the defendants or which indicate defendants' innocence.

With regard to this information, the government represents that it is well aware of its duty under *Brady*, and that though it knows of no exculpatory evidence at this time it will abide by its continuing duty to disclose any such evidence that does come to its attention. Based on these representations no need currently exists for an order from this Court; it is enough that the government realizes that the Court expects it will live up to its duty and its pledge under *Brady*. The Court will, however, remind the United States Attorney of its belief that the duty arising under *Brady* encompasses the requirement that known exculpatory evidence be made available to defendants in advance of trial so as to allow the defendants sufficient time for its evaluation, preparation, and presentation at trial. In this regard the government's attention is called to *United States v. Deutsch*, 373 F.Supp. 289 (S.D.N.Y.1974), wherein the Court prescribed what I consider to be appropriate and reasonable guidelines for the production of *Brady* demands.

The second class of items requested concerns matters which the government contends comes within a specific exception to discovery provided for in Rule 16(b), Fed.R. Crim.P. This class consists of the following requests:

5. Any writing, memorandum or record dealing with the decision on the part of the Government to return the initial Indictment herein in the Southern District of Ohio, Eastern Division, rather than in the Central District of California or any other district.

6. Any writing, memorandum or record dealing with the decision on the part of the Government relative to the transfer of the proceedings under the initial Indictment from the Southern District of Ohio, Eastern Division, to the Central District of California.

7. Any writing, memorandum or record dealing with the decision on the part of the Government to obtain a re-transfer of the proceedings from the Central District of California to the Southern District of Ohio, Eastern Division.

8. Any writing, memorandum or record dealing with the decision on the part of the Government to return a second Indictment (this Indictment) in the Southern District of Ohio, Eastern Division.

9. Any writing, memorandum or record dealing with the decision on the part of the Government to dismiss the initial Indictment in the Central District of California.

10. Any writing, memorandum or record dealing with the lapse of time that intervened from the time the postal inspectors or other officials first learned of the mailings referred to in the initial Indictment and the return of the initial Indictment against defendants in February of 1974.

12. Any statements made by Government witnesses to any agency of the Government or to any Grand Jury and any records produced by such Government witnesses relative to the defendants.

19. Any writing, memorandum or record giving postal inspectors and others involved in the enforcement of the postal laws guidance as to when a sexually oriented ad should be dealt with under Title 18 U.S.C. § 1461, and when it should be dealt with under Title 39 U.S.C. §§ 3010, 3011, and Title 18 U.S.C. §§ 1735, 1737.

Rule 16(b) provides in relevant part that:

[T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation of prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the

government except as provided in 18 U.S.C. § 3500.

 The Court believes that the above enumerated requests fall within this exception in Rule 16, and accordingly, production of this material is not authorized by the Rule. This, however, is not determinative of the question of whether disclosure should ultimately be denied, for the Federal Rules of Criminal Procedure are not the sole arbiter of a court's authority in this situation. See *United States v. Jackson*, 374 F.Supp. 168 (N.D.Ill.1974) *aff'd in part, rev'd in part* 508 F.2d 1001 (7th Cir. 1975). In *Jackson* the district court explored the bases for a court's authority to order disclosure. It concluded that

> Without denigrating their importance to the administration of criminal justice, it is accurate to say that the Rules are more regulators than creators of authority. Absent their provisions, there remains the twin grants from the Constitution [Art. III] and the Congress [28 U.S.C. §§ 132 and 3231] of judicial power which can be exercised by a district judge 'except as otherwise provided by law, or rule or order of court . . . ' 28 U.S.C. § 132(c). Accordingly, it is inaccurate to assert that, absent the explicit mention of a given procedure in the Rules or Acts of Congress, a district court lacks authority to require a given procedure in a particular case. In clear recognition of this Rule 57(b) provides that 'If no procedure is specifically prescribed by rule, the [district] court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute.'

*United States v. Jackson, supra* at 174. This Court agrees with the conclusion—and the reasoning underlying it—of the *Jackson* court. Again, however, this does not automatically dispose of the instant case. While acknowledging this Court's discretionary power to order disclosure not authorized by the Rules, I find that such power should only be employed in those situations in which a defendant has specifically put forth some evidence which would necessitate this type of disclosure, or where such need is

readily apparent to the Court. This is simply not the case here. Aside from some general allegations that they are the victims of arbitrary and vexatious forum shopping and discriminatory enforcement, defendants make no showing supporting a need for full disclosure of internal government files. Accordingly, these requests are denied.

 The final class of materials requested by the defendants is a miscellaneous group which will be dealt with seriatim. Included in this group are the following:

3. Any written or recorded statements made by the defendants to any postal inspector or agent, servant or employee of the United States, the existence of which is known or by exercise of due diligence may become known to the attorney for the Government.

The government is ordered to furnish any such statements known or which by the exercise of due diligence becomes known to it. See Rule 16(a)(1), Fed.R.Crim.P.

11. Any writing, memorandum or record relating to the purchase by 'Dolores B. Jacoby,' 1930 Seaford Court, Columbus, Ohio 43220, of sexually oriented material, or any request of said 'Dolores B. Jacoby' for brochures advertising sexually oriented material prior to September 19, 1972.

16. Any and all evidence obtained by the use of electronic eavesdropping equipment which may have been utilized to record, transmit or eavesdrop upon any conversation between the defendants, their attorneys, or any other person or persons, concerning the charges in the instant case, including monitoring of telephone communications and/or 'bugging.'

The United States Attorney represents that these requests have already been complied with by the government.

13. The names and addresses of all witnesses to be produced by the Government at trial.

A defendant in a noncapital case has no constitutional right to require disclosure of the government's witness list. See 8

Moore, *Federal Practice* ¶ 16.03[3] and cases cited therein. As stated above, in a proper case, where disclosure is shown to be essential for an adequate defense, a court does have the discretionary power to authorize production of the government's witness list. Defendants have not, however, established any special circumstances warranting disclosure and, accordingly, this request is denied.

14. Any writing, memorandum or record in the possession of the plaintiff [sic] relating to whether the advertising brochures referred to in the Indictment:

(a) are utterly without redeeming social value;

(b) lack serious literary, artistic, political or scientific value;

(c) depict or describe in a patently offensive way sexual conduct, and if so, what sexual conduct.

15. Any writing, memorandum or record relating to whether the average person would find that the advertising brochures named in the Indictment, taken as a whole, appeal to the prurient interest,

(a) applying contemporary standards of the Southern District of Ohio, Eastern Division; or

(b) applying contemporary national standards.

Defendants appear to be asking for memoranda containing the legal conclusions or opinions of governmental personnel regarding the obscenity of the mailed materials. Such requests are not a proper subject for pretrial disclosure and they are therefore denied.

17. Any writing, memorandum or record relating to the investigation over the past two years, which investigations involve case work-ups for prosecution under United States statutes for alleged obscenity violations involving the mailing of allegedly obscene brochures. These records should include the individual case work-ups, the officers and prosecuting attorneys' names, addresses and present whereabouts, the prospective or charged defendants by name and address and present whereabouts, the case numbers and courts where such cases were filed, the styles of such cases, and more particularly, the exact and defined titles and descriptions of the various materials involved in those case work-ups or prosecutions.

18. Any writing, memorandum or record within the last two years relating to various investigations by governmental agencies for the purpose of investigating the various types of sexually oriented advertisements and sexually oriented materials distributed by the United States Postal Service, and such information should include the names and addresses of the investigation officers, witnesses, theater owners, bookstore owners, and states' attorneys, and further information should include whether or not such investigations culminated in prosecutions, and the prosecutions should be stated by case style, number and court where such cases were filed, and more particularly, in each particular investigation, the exact title and description and any other identification available regarding the various types of advertisements and materials involved and made the basis of those investigations.

These requests again apparently are aimed at securing information to support defendants' contentions that they are being subjected to discriminatory enforcement of the law and that the government has engaged in arbitrary forum shopping. Again, the Court emphasizes the fact that defendants have made no factual showing to support these contentions. Absent this, the Court finds the extensive disclosure—entailing substantial work in compiling the information—to be unwarranted. Selectivity in enforcement is not in itself constitutionally prohibited; rather, the selectivity must be based on some unjustifiable standard such as race or religion. See *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972). Since there is no indication that this has occurred here, and in the absence of other sufficient justification, defendants' requests in this regard are also denied.

### Motion for A Bill of Particulars

 Defendants also seek a bill of particulars concerning some nineteen separate items of information. The purpose of such a motion, which is addressed to the sound discretion of the Court, is to provide a defendant with specifics omitted from the indictment which are necessary for a preparation of his defense and the avoidance of surprise at trial. The test then in passing upon a motion for a bill of particulars is

whether it is necessary that defendant have the particulars sought in order to prepare his defense and in order that prejudicial surprise will be avoided. A defendant should be given enough information about the offense charged so that he may, by the use of diligence, prepare adequately for the trial.

1 Wright, *Federal Practice and Procedure* (Criminal) § 129. While the above test affirms the right of a defendant to have all information necessary to his defense—and courts have so held—an equal number of cases iterate the proposition that a bill of particulars may not be used to elicit matters of an evidentiary nature. See 1 Wright, *Federal Practice and Procedure* (Criminal) § 129 and cases cited therein. Necessarily, then, a court must engage in a process of line drawing in an effort to identify that point along the continuum where matters necessary to an adequate defense end and matters beyond the proper scope of a bill of particulars begin.

 In the instant case defendants make some twelve requests (Items 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13) for information as to whether the advertising brochures referred to in the indictment are obscene as that term has been defined in Supreme Court decisions. The Court believes that the indictment is in this respect phrased with sufficient specificity so as to inform defendants the charge against which they must defend. As the Supreme Court has recently stated in ruling on the sufficiency of an indictment phrased in terms of 18 U.S.C. § 1461:

The definition of obscenity . . . is not a question of fact, but one of law; the word 'obscene' as used in 18 U.S.C. § 1461, is not merely a generic or descriptive term, but a legal term of art. . . The legal definition of obscenity does not change with each indictment; it is sufficiently definite in legal meaning to give a defendant notice of the charge against him.

*Hamling v. United States*, 418 U.S. 87, 119, 94 S.Ct. 2887, 2908, 41 L.Ed.2d 590, 621 (1974). Similarly, defendants' request (Item 16) for the definition of the words "obscene," "lewd," "lascivious," "indecent," "filthy," and "vile," is also denied. Again, each of these has attained some legal meaning through case law and an indictment phrased in these terms is sufficiently definite. See *United States v. Frew*, 187 F.Supp. 500 (E.D.Mich.1960).

 In Item 14 defendants ask whether the brochures referred to in the indictment are "sexually oriented advertisements" as that term is defined in 39 U.S.C. § 3010.[2] Defendants do not state the relevance of this definition to an indictment under 18 U.S.C. § 1461, nor does the Court itself find any. Accordingly, this request is denied.

 Item 17, which seeks the address of the post office where each of the envelopes

2. 39 U.S.C. § 3010 provides in pertinent part that:

(a) Any person who mails or causes to be mailed any sexually oriented advertisement shall place on the envelope or cover thereof his name and address as the sender thereof and such mark or notice as the Postal Service may prescribe.

(d) 'Sexually oriented advertisement' means any advertisement that depicts, in actual or simulated form, or explicitly describes, in a predominantly sexual context, human genitalia, any act of natural or unnatural sexual intercourse, any act of sadism or masochism, or any other erotic subject directly related to the foregoing. Material otherwise within the definition of this subsection shall be deemed not to constitute a sexually oriented advertisement if it constitutes only a small and insignificant part of the whole of a single catalog, book, periodical, or other work the remainder of which is not primarily devoted to sexual matters.

named in each count of the indictment was allegedly deposited, again requests information which the Court does not believe is essential or necessary to preparation of a defense or avoidance of surprise; nor have defendants stated any specific reason for this demand. Accordingly, it too is denied.

■ The Court comes to a different conclusion with respect to Items 18 and 19 in which defendants ask whether the government claims that either of the defendants actually deposited the envelopes mentioned in the indictment in the mails and whether either had actual knowledge that the allegedly obscene material was being mailed to the person named in the indictment. Since the use of the mails is an essential element of the offense with which defendants are charged, I conclude that this information is necessary if defendants are to be sufficiently apprised of the offense and able to defend against it adequately. The motion for a bill of particulars is thus granted with respect to these two items. The government having represented that it has complied with defendants' requests with regard to the remaining particulars, no further action need be taken on these.

Accordingly, it is hereby ordered that defendants' motion for a bill of particulars is denied, except with respect to Items 18 and 19 and except to the extent it has already been complied with by consent of the parties.

*Motion for Transfer of Proceedings*

■ Defendants also seek to have these proceedings transferred from this dis-

trict to the Central District of California pursuant to Rule 21(b), Fed.R.Crim.P.[3] This Rule allows a transfer when it would be "[f]or the convenience of parties and witnesses, and in the interest of justice." Defendants contend that the reasons of convenience existing at the time of the prior transfer of the action against these defendants still exist, see n. 3 *infra*, and consequently that they are entitled to another transfer. It should be noted at the outset that the determination of transfer *vel non* is vested in the sound discretion of the Court. A criminal defendant has no constitutional right to a trial in the district in which he resides. *Platt v. Minnesota Mining Company*, 376 U.S. 240, 245, 84 S.Ct. 769, 772, 11 L.Ed.2d 674, 678 (1964). In *Platt* the Supreme Court quoted with apparent approval some ten factors which are pertinent in the determination of whether a case should be transferred. These included: (1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. *Platt v. Minnesota Mining Company, supra* at 243–44, 84 S.Ct. at 771, 11 L.Ed.2d at 677–678.

■ In determining the propriety of transfer a Court must decide which factors

---

**3.** It is pertinent to note some background regarding the present motion to transfer. These same defendants were previously indicted in this district on February 12, 1974, and charged with eight violations of 18 U.S.C. § 1461. After entering pleas of not guilty they made a motion to transfer the proceedings to the Central District of California, which motion was granted by The Honorable Joseph P. Kinneary, Chief Judge of this district. Subsequently, defendants moved in California to dismiss the indictment on the ground that the mailed materials allegedly offended standards of the Southern District of Ohio but the trial jury would be

called upon to determine whether the materials offended standards of the Central District of California. Faced with this apparent dilemma, The Honorable David W. Williams, Judge of the Central District of California, arranged with Judge Kinneary to retransfer the case back to this Court. When retransfer was found not to be possible since there was no power under the Federal Rules of Criminal Procedure for retransfer of a case, the indictment pending in California was dismissed and defendants were reindicted in Ohio, occasioning this second motion to transfer.

support transfer and which do not and then attempt to strike a balance among these varying considerations. In the instant case, although defendants and apparently some of their witnesses reside a great distance from Columbus, stronger countervailing factors lead me to conclude that transfer to California would not be in the best interests of justice. Defendants are charged with using the mails to deliver certain obscene materials. The test for judging the obscenity of these materials has been set forth by the Supreme Court in *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419, 431 (1973):

> The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest. . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific interest.

In commenting upon the *Miller* test the Supreme Court in *Hamling v. United States*, 418 U.S. 87, 104, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590, 612 (1974), observed that *Miller* had rejected the idea of "uniform nationwide standards" and had restated the test in "terms of the understanding of the 'average person, applying contemporary community standards.'" Coupled with the rule, re-affirmed in *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), that the prosecution is not constitutionally required to produce "expert" witnesses to testify as to the obscenity of materials, the *Miller* test entitles a juror

> to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a "reasonable" person in other areas of the law.

The Court then went on to summarize the impact of the *Miller* test thusly:

> The result of the *Miller* cases, therefore, as a matter of constitutional law and federal statutory construction, is to permit a juror sitting in obscenity cases to draw on knowledge of the community or vicinage from which he comes in deciding what conclusion 'the average person, applying contemporary community standards' would reach in a given case. Since this case was tried in the Southern District of California, and presumably jurors from throughout that judicial district were available to serve on the panel which tried petitioners, it would be the standard of that 'community' upon which the jurors would draw.

*Hamling v. United States, supra*, 418 U.S. at 105–106, 94 S.Ct. at 2901, 41 L.Ed.2d at 613.

I have taken the liberty of quoting extensively from the *Hamling* decision because I believe that it provides the basis for this Court's decision not to transfer the instant case. Although the Supreme Court recognized that evidence of standards existing outside a particular district could be admitted if a district court felt such evidence would aid jurors in their resolution of the obscenity issue, this Court believes that a juror in this district would be in a uniquely better position to apply this community's standards than would a juror in California. Defendants argue that this line of reasoning would violate their right to a change of venue in obscenity cases; however, as noted above defendants have no "right" to a transfer. The Court declines to decide whether cases arising under 18 U.S.C. § 1461 are such as to preclude transfer *per se*. I merely decline to transfer under the circumstances presented herein. Accordingly, the motion to transfer is denied. See also *Smith v. United States*, 505 F.2d 824 (6th Cir. 1974).

*Motion to Dismiss the Indictment .*

 Finally, defendants ask this Court to dismiss the indictment. Many of the

grounds set forth in support of this motion have previously been dealt with by the Court in regard to the other motions made by defendants and will not be considered again here. Defendants do, however, raise one new contention: they assert that the indictment fails to allege the element of scienter necessary for an offense under 18 U.S.C. § 1461. According to defendants it is not enough simply to allege and prove that each of the defendants "knowingly" used the mails and "knowingly caused" certain materials to be delivered by mail. Rather, it is also necessary to allege and prove that each knew both the contents of the materials and also that the materials were obscene. This precise argument was also made by defendants in *Hamling v. United States*, 418 U.S. 87, 119–124, 94 S.Ct. 2887, 2908–2911, 41 L.Ed.2d 590, 621–624 (1974). In rejecting this definition of scienter, the Supreme Court quoted with approval an earlier decision in which again the defendant had asserted that it was necessary for a defendant to know or believe that the mailed material was obscene:

The statute is not to be so interpreted. The inquiry under the statute is whether the paper charged to have been obscene, lewd, and lascivious was in fact of that character, and if it was of that character and was deposited in the mail by one who knew or had notice at the time of its contents, the offense is complete, although the defendant himself did not regard the paper as one that the statute forbade to be carried in the mails. Congress did not intend that the question as to the character of the paper should depend upon the opinion or belief of the person who, with knowledge or notice of its contents, assumed the responsibility of putting it in the mails of the United States. The evils that Congress sought to remedy would continue and increase in volume if the belief of the accused as to what was obscene, lewd, and lascivious was recognized as the test for determining whether the statute has been violated.

*Rosen v. United States*, 161 U.S. 29, 41–42, 16 S.Ct. 434, 438, 40 L.Ed. 606, 610 (1896). In light of the Court's decision in *Rosen* and its re-affirmation in *Hamling*, defendants' arguments in the instant case must be rejected. The motion to dismiss is, accordingly, denied.

For the reasons set forth in the above memorandum it is ordered that the motion for disclosure of the grand jury proceeding be denied; it is further ordered that the motion for discovery and inspection be denied, with the exception of that material described in Item 3; and it is further ordered that the motion for a bill of particulars be denied except with respect to Items 18 and 19 and except to the extent it has already been complied with by consent of the parties; and it is further ordered that the motions to transfer these proceedings and to dismiss the indictment be denied.