Joanne MACKO, et al., Plaintiffs,

v.

Barry M. BYRON, et al., Defendants.

No. C77–1158.

United States District Court,
N.D. Ohio, E.D.

Oct. 1, 1982.

Herbert L. Braverman, Beachwood, Ohio, for Joanne Macko.

Daniel J. Ryan and Charles R. Laurie, Jr., Cleveland, Ohio, for Helen Merteneit and John Szabo.

Abraham Cantor, Byron & Cantor, Willoughby, Ohio, for all defendants.

## MEMORANDUM and ORDER

BEN C. GREEN, Senior District Judge:

In this civil rights action, plaintiffs Joanne Macko, Helen Merteneit, and John Szabo seek damages from the City of Willoughby Hills and numerous city officials. Plaintiffs claim they were unjustly charged with criminal offenses as punishment for their exercise of First Amendment rights.

Defendants in the action are the City, Mayor Melvin G. Schaefer, Clerk Marilyn Monzula, Law Director Barry M. Byron, and present or former Councilmen Sabby J. DeFrank, Robert Moorehead, Morton O'Ryan, Lawrence O'Donnell, and George Kraincic.

All defendants have moved for dismissal of the action or for summary judgment. Numerous issues are raised. Plaintiffs have filed briefs opposing the motions. Reply and cross-reply briefs have been filed, and a supplementary motion for summary judgment was filed and briefed. The volume of paper generated by these motions exceeds six inches in depth.

This Court has jurisdiction to hear and decide this matter pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

At the outset, it must be noted that summary judgment is proper only where it appears from the record that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. Further, when considering a motion for summary judgment, the Court must construe all facts and inferences drawn from the facts in a light most favorable to the non-moving party, in this case the plaintiffs. *Adickes v. Kress & Co.,* 398 U.S. 144, 147, 90 S.Ct. 1598, 1602, 26 L.Ed.2d 142 (1979); *Smith v. Hudson,* 600 F.2d 60 (C.A. 6, 1979).

**472**

## A. FACTS

Viewed in that light, it appears the record [1] thus presents the following framework of material facts. Detailed factual matters will be found where they apply in the remainder of this memorandum.

At all times relevant to this action, plaintiffs were residents of Willoughby Hills, a suburb of Cleveland. In August 1976, plaintiffs, other citizens, and two city councilmen began a campaign to recall from office the mayor and the five other councilmen. Petitions toward that end were circulated, and numerous signatures were secured.

Believing the petitions to be valid in form and the signatures to be sufficient in number, plaintiffs filed them with the defendant Clerk on September 2, 1976. On September 13, relying on a number of grounds, the Clerk informed plaintiffs that the petitions were defective.

Plaintiffs then initiated a mandamus action in the Ohio Supreme Court, seeking to have the recall issue placed on the November 1976 ballot. In a brief opinion, *State ex rel. Macko v. Monzula,* 48 Ohio St.2d 35, 356 N.E.2d 493 (1976), the Ohio Supreme Court held that the form of the circulator's affidavit on the petitions was defective, and the recall issue never reached the voters.

On December 15, 1976, the Lake County Grand Jury indicted plaintiffs for various offenses related to the recall campaign. They were thereafter arrested, jailed, and required to post bond to secure their release.

Mrs. Macko was charged, in a five-count indictment, with one felony count of making a false statement in her circulator's affidavit. Apparently, it was that an individual who signed a petition she circulated was not a registered voter at the time he signed. The remaining four misdemeanor counts in the indictment related to signatures of non-registered signers.

Mrs. Merteneit was charged, in a one-count indictment, with signing the petitions twice.

Mr. Szabo was charged with three misdemeanor counts alleging that he miscounted the number of signatures on three of the petitions which he had circulated, and thus had entered the wrong number in his circulator's affidavit.[2] He was also charged with four felony counts of perjuring himself during a deposition taken in the mandamus proceedings before the Ohio Supreme Court. The precise nature of the alleged perjury is not clear from the record, but apparently had to do with the fact that the middle initial in his signature on some of the petitions appeared to have been written with a different pen than the rest of his signature.

At the time the plaintiffs were indicted, city officials knew of other individuals who were not involved in the recall campaign and who had committed acts similar to those allegedly committed by the plaintiffs herein. Such other individuals were not, however, charged with any criminal offense.

At the end of 1976, or approximately two weeks after plaintiffs were arrested, the county prosecuting attorney who had obtained the indictments completed his term and left office. The newly elected prosecutor declined to continue the prosecution, and all of the charges against the plaintiffs were eventually dismissed.[3]

---

1. Before deciding this motion, the Court carefully reviewed the entire record in this lawsuit, including material filed prior to the proceedings in the Court of Appeals. For support of specific factual findings, the Court found most helpful the answers of all parties to interrogatories propounded by their respective opponents, and the deposition testimony of defendants Monzula and Byron. Defendants had initially objected to consideration of the deposition testimony, but by letter dated August 19, 1982, the objection was withdrawn.

2. The circulator's affidavit, which formed the basis for some of the charges against both Mr. Szabo and Mrs. Macko, was found to be defective by the Ohio Supreme Court. The Supreme Court's ruling on the issue predated the indictments by at least one month.

3. On January 12, 1977, less than two weeks after he had assumed office, the incoming prosecutor entered a *nolle prosequi* in the case against Mr. Szabo.

This action was initiated against all defendants except the City on November 4, 1977. The City was named a new party defendant when the second amended complaint was filed on May 21, 1981.

As originally brought, this action named as additional defendants Paul H. Mitrovich, the prosecuting attorney who obtained the indictments, and Stephen J. Futterer, the assistant prosecutor who handled the cases under both Mitrovich and his successor in office. The original complaint also alleged a cause of action founded in 42 U.S.C. § 1985.

By order dated April 9, 1979, this Court entered summary judgment in favor of defendants and dismissed the complaint. Plaintiffs appealed that order, and on February 19, 1981, the Sixth Circuit Court of Appeals affirmed in part and vacated in part, 641 F.2d 447, in light of intervening United States Supreme Court authority.

### B. THE FIRST COUNT OF THE COMPLAINT

■ The first count of the second amended complaint repeats a claim dismissed from the first complaint. It alleges that defendant Monzula unlawfully denied plaintiffs their First Amendment right to vote on the recall matter. Defendant Monzula has moved for summary judgment in her favor on this count, claiming that the decision of the Ohio Supreme Court in the mandamus action is *res judicata* to the claim. The Court agrees.

The first count of the second amended complaint is essentially the same claim against Monzula which this Court dismissed in 1979 on the *res judicata* grounds reargued here. That dismissal was affirmed by the Court of Appeals in its 1981 decision. No appeal was taken of the Court of Appeals' judgment, and it has become final.

Therefore, the first count of the second amended complaint is barred, not only by the doctrine of *res judicata,* but also by the law of this case. Defendant Monzula is entitled to judgment in her favor as a matter of law, and judgment is hereby entered dismissing the first count of the second amended complaint.

### C. THE SECOND COUNT OF THE COMPLAINT

The second count of the second amended complaint alleges that all defendants conspired to punish plaintiffs for the exercise of their First Amendment rights, and that as a result, plaintiffs were unlawfully charged with criminal offenses. The defendants have advanced a number of legal theories in their motion to dismiss or for summary judgment. These theories will be dealt with *seriatim.*

#### 1. *Motion to Dismiss the City of Willoughby Hills*

■ The defendant City of Willoughby Hills moves for summary judgment on the second count, asserting that the claim against it is barred by the statute of limitations. In opposition, plaintiffs question the appropriate limitations period to apply in this case.

■ There is no federally mandated statute of limitations for general civil rights actions brought pursuant to 42 U.S.C. § 1983. Federal courts thus apply the statute of limitations for the most comparable state law cause of action. *Board of Regents v. Tomiano,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Wright v. Tennessee,* 628 F.2d 949 (C.A. 6, 1980); *Warner v. Perrino,* 585 F.2d 171 (C.A. 6, 1978). The statute of limitations for § 1983 actions alleging constitutionally-impermissible prosecutions is the one-year period set by § 2305.11(A), Ohio Revised Code, for certain torts, including malicious prosecution.

A *nolle prosequi* was entered in the case against Mrs. Merteneit on March 4, 1977.

The incoming prosecutor took no action in the case against Mrs. Macko, and her attorneys moved for dismissal of the indictments for failure of the prosecutor and the courts to bring the case to trial within the time limits set by §§ 2945.71–.73, Ohio Revised Code. The prosecutor did not oppose the motion, and by order dated July 14, 1977, the indictments against Mrs. Macko were dismissed.

*Kilgore v. Mansfield,* 679 F.2d 632 (C.A. 6, 1982).

Since the plaintiffs' claims against the City were filed on May 21, 1981, substantially in excess of one year after the indictments against them were dismissed (see note 3, *supra* ), their claims against the City are barred by time. The City's motion for summary judgment is therefore granted, and the complaint against the City is dismissed.

### 2. *Motion to Dismiss for Lack of Specificity*

■ The remaining individual defendants move to dismiss the entire complaint against them, claiming that it fails to state with sufficient specificity the factual basis for the civil rights claim.

The specific language at issue is contained in paragraphs 14 and 18 of the second amended complaint which read:

14. Each defendant acting under color of law and in active concert with all other defendants and pursuant to the city's policies and procedures did conspire to deprive and did deprive plaintiffs of the equal protection of the laws by maliciously, knowingly, and unlawfully giving incomplete and false information and preventing information to be provided to the grand jury and causing an indictment to be issued against plaintiffs by giving and not giving this information to the prosecuting attorney for Lake County and subsequently this directly caused secret indictments to be issued charging perjury and various violations of the Ohio laws relating to petitions.

18. Defendant's actions were perpetrated against plaintiffs to discourage plaintiffs from initiating a second recall drive and were also intended as punishment for plaintiffs having initiated their first recall effort, all in violation of their rights as provided under the Constitution.

Defendants correctly cite authority to the effect that "a pleading is insufficient to state a cause of action under the Civil Rights Act if [its] allegations are merely conclusory," *Smith v. Terrion,* 636 F.2d 1219 (C.A. 6, 1980).[4] "[S]ome particularized facts demonstrating a constitutional deprivation are required to sustain a cause of action." *Ibid.*

An examination of the challenged language shows that while they perhaps are not as artfully drafted as they might have been, paragraphs 14 and 18 of the second amended complaint meet the specificity requirements for civil rights pleading. There are specific allegations that the individual defendants conspired to deprive plaintiffs of the equal protection of the laws, and acted to provide false and incomplete information to the county prosecutor which resulted in indictments. Paragraph 18 alleges specifically that such a course was followed to punish plaintiffs for the exercise of protected First Amendment freedoms.

Such language satisfies the general pleading requirement that a defendant be put on notice of the conduct alleged to give rise to liability. Such language also fairly meets the commands of Civ.R. 8(a), which requires "a short and plain statement" of the allegations in the complaint. Such language also satisfies the requirement that "some particularized facts" be stated in support of the claim of violation of civil rights.[5] *Cf., Glasson v. Louisville,* 518 F.2d 899 (C.A. 6, 1975).

---

**4.** Although the text of the Court's opinion is not published in the Federal Reporter 2d, it is available in LEXIS, GENFED Library, CIR File.

**5.** Defendants can claim no prejudice from any lack of specificity, particularly at this late date. Extensive discovery has already been accomplished, and via their answers to defendant's interrogatories, plaintiffs have made plain the specific acts which are said to have been the result of a conspiracy between the defendants. Plaintiffs have also, by affidavit, averred specifically that the conspiracy commenced on or about September 4, 1976, the date that the defendants allegedly met at the Willoughby Hills City Hall. Thus, there are specific factual assertions in the five-year-old record in this case which would cure any defect in the pleadings.

To require more would be to require civil rights plaintiffs to set forth their entire factual case in the complaint. In addition to being unduly burdensome, such a rule would effectively eliminate the role of discovery in civil rights cases.

The motion to dismiss the complaint for failure to state a claim with sufficient specificity is, therefore, denied.

### 3. *Motion for Summary Judgment on Merits of Claim*

Defendants next move for summary judgment as to the merits of the civil rights count. In summary, defendants assert (a) that none of the defendants except Byron and Monzula was involved in presenting evidence either to the prosecutor or the Grand Jury; (b) that none of the defendants discussed between themselves the matter of testimony before the Grand Jury prior to issuance of the indictments; (c) that the indictments are *prima facie* proof of probable cause, and that this action is therefore barred. Each claim is supported by affidavits and documentation. Plaintiffs, who have alleged collective liability based upon a conspiracy rather than acts by individual defendants, have filed affidavits contesting some of the assertions made by defendants. Plaintiffs also rely upon answers to interrogatories and the deposition testimony of defendants Byron and Monzula.

The Court finds that while some of the assertions made by defendants might be sufficient to convince a jury to find in their favor, the record lacks the factual clarity required to support summary judgment.

### a. *Common Liability for Acts of Co-conspirators*

As to their first claim, the affidavits of all individual defendants except Byron and Monzula assert that the defendant mayor and councilmen had no direct involvement in presenting evidence or testimony to the Grand Jury. Indeed, it appears from the affidavits that defendants Byron and Monzula were the only conduits of information from the City to either the prosecutor or the Grand Jury.

These assertions do not, however, refute the allegations and averments (a) that a conspiracy existed between all defendants, or (b) that individual councilmen and the mayor were involved in the conspiracy. The record does, in fact, contain evidence from which the converse could, and in the context of this motion for summary judgment, must be inferred. That evidence may be summarized as follows.

In their answers to defendants' interrogatories plaintiffs aver that shortly after the recall petitions were filed, the defendants met to determine their course of action. In their answers to plaintiffs' interrogatories, defendants Kraincic, O'Donnell, O'Ryan and Moorehead state that at roughly that time, all defendants met to discuss whether their reaction to the recall campaign would be a joint one. The councilmen's answers to the interrogatories indicate that they and the mayor decided to fight the recall in a common effort. The councilmen state that defendant Byron advised them of their legal rights.

One of the steps which the mayor and councilmen took as a joint effort was to send a letter to each of the individuals who signed the petitions. The letter, dated September 3, 1976 and attached as an exhibit to the defendants' answers to plaintiffs' interrogatories, refutes each of the grounds alleged in the recall petitions. It then asks the signers to remove their signatures from the petitions.

Defendant Monzula testified at her deposition of October 5, 1976, that she typed the letter while at work in City Hall. At the bottom of the letter are the typed names, intended as signatures, of the defendant mayor and five councilmen.

Mrs. Monzula also testified that Byron, who was legal counsel to the mayor and five councilmen as a group, was the person she looked to for instructions. From her testimony, it is plain that Byron frequently gave Mrs. Monzula instructions on how to deal with the recall matter, and that Mrs. Monzula followed those instructions. Mrs. Monzula also testified that Byron was her personal attorney.

Thus, there is evidence in the record from which a jury could find that the defendants decided at an early date to work in concert to oppose the recall campaign. There is also evidence from which a jury could find that at least one overt act occurred in furtherance of the common goal.

There is also evidence in the record from which a jury could find that the defendants sought, and eventually achieved, the issuance of criminal charges against plaintiffs.

Plaintiffs have averred in answers to defendants' interrogatories that defendant Schaefer, in the presence of all other defendants at a City Council meeting, and without objection from any of them, publicly threatened criminal or civil proceedings against anyone who participated in the recall effort. Similar statements are made in plaintiffs' affidavits.

The effort to secure criminal sanctions against the plaintiffs apparently began soon after the petitions were filed. On September 15, 1976, about two weeks after the petitions were filed, Byron was quoted in the Cleveland Plain Dealer, a daily newspaper, as stating he would announce later that day whether he would prosecute certain individuals who had signed the petitions. In his deposition, taken January 30, 1980, Byron was given the opportunity to, but did not, deny making the statement to the Plain Dealer reporter.

The same day, September 15, Byron wrote a letter to then Ohio Secretary of State Ted W. Brown. A copy of the letter, signed by Byron in his capacity as city law director, is attached as an exhibit to defendants' motion for summary judgment. The letter contains six specific allegations of violations of election laws which, Byron wrote, were "uncovered" by "city officials." Byron testified at his deposition that the "city officials" referred to in the letter were the defendant mayor, councilmen, and clerk, all of whom assisted him in the investigation. Byron's letter asked Secretary of State Brown to investigate the charges further, and to prosecute the "guilty parties involved."

At his deposition, Byron testified that the "guilty parties" he wanted Brown to prosecute included plaintiffs Macko, Szabo, and Merteneit.

Byron testified that on September 23, 1976, he provided a copy of the letter to Monzula to read publicly at that evening's city council meeting. Mrs. Monzula did so in the presence of all defendants, and without objection from any of them. Substantial public uproar followed.

Secretary of State Brown eventually replied to Byron that he would decline to investigate or prosecute the allegations contained in the September 15 letter or to prosecute any individual. Byron testified that he then brought the matter to the attention of County Prosecutor Mitrovich. Byron testified that he met with Mitrovich twice and provided the prosecutor with selected petitions and with selected portions of the depositions taken during the mandamus action in the Ohio Supreme Court. Mrs. Monzula subsequently testified before the Lake County Grand Jury, and the indictments followed.

■ It is the fundamental law of conspiracy or joint venture that a conspiracy is an agreement among two or more parties to achieve a result, plus an overt act by at least one conspirator to that end. Where either the intended result or any of the methods used are illegal, from the time of the first overt act all non-immune co-conspirators are liable for the acts of any co-conspirator. *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Griffin v. Breckinridge,* 403 U.S. 88 at 103, 91 S.Ct. 1790 at 1798, 29 L.Ed.2d 338 (1971); *Cameron v. Brock,* 473 F.2d 608 (C.A. 6, 1973); *Saier v. State Bar of Michigan,* 293 F.2d 756, 761 (C.A. 6, 1961). *See, also, Bruner v. Dunaway,* 684 F.2d 422, 426 (C.A. 6, 1982); *Smith v. Ross,* 482 F.2d 33, 36–37 (C.A. 6, 1973); *Edmonds v. Dillin,* 485 F.Supp. 722, 726–27 (N.D.Ohio, 1980).

Thus, even though the mayor and five councilmen may not have been personally involved in the initiation of charges against plaintiffs, it does not follow that they are

not liable. There is evidence in the record from which a jury could find that all defendants decided to fight the recall as a joint effort, and that the initiation of criminal charges was one of the methods used in that effort. It therefore follows that all defendants might be liable in the event that any act in furtherance of their common goal violated plaintiffs' First Amendment rights to petition the government and seek removal of public officials by peaceful means. *Glasson v. Louisville, supra; Cameron v. Brock, supra.*

### b. First Amendment Rights

We now examine that facet of this case. Defendants assert that the issuance of indictments by the Grand Jury constitute *prima facie* evidence of probable cause, and that therefore no action in malicious prosecution can exist.

If this was a malicious prosecution case, such an assertion would be correct and dispositive of this lawsuit. But this is not a malicious prosecution case. This is a *discriminatory* prosecution action, in which plaintiffs claim they were prosecuted as punishment for the exercise of First Amendment freedoms.

To establish such a claim, plaintiffs must prove (1) that others similarly situated generally have not been prosecuted for conduct similar to that for which they were prosecuted, and (2) that their "selection for prosecution was based on an impermissible ground such as race, religion, or the exercise of First Amendment rights." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962); *Cameron v. Brock, supra; United States v. Germain,* 411 F.Supp. 719 (S.D.Ohio, 1975). In discriminatory prosecution actions the questions of probable cause, guilt, or innocence are not relevant.[6]

The question of discriminatory prosecution related not to the guilt or innocence

of appellants, but rather addresses itself to a constitutional defect in the institution of the prosecution. *United States v. Berrigan,* 482 F.2d 171, 175 (C.A. 3, 1973).

*See, also, United States v. Falk,* 479 F.2d 616, 619, 620, n. 5 (C.A. 7, *En Banc,* 1973); *United States v. Steele,* 461 F.2d 1148 (C.A. 9, 1972); *United States v. Crowthers,* 456 F.2d 1074, 1080 (C.A. 4, 1972); *Moss v. Hornig,* 314 F.2d 89, 92–93 (C.A. 2, 1963); *cf. Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072, 30 L.Ed. 220 (1886).

There is evidence in the record from which a jury could find in favor of plaintiffs on both elements of the cause of action. First, there is evidence that other individuals, situated similarly as plaintiffs, were not prosecuted. In his deposition, Byron testified that he was aware as early as September 15, 1976, that several individuals had signed the petitions more than once. These individuals included plaintiff Merteneit, a Mrs. Yaeger, and, apparently, a John N. Howlett. Only Mrs. Merteneit was indicted for that offense.

Second, there is evidence from which a jury could infer that the selection of plaintiffs was based on their active involvement in the recall campaign. For example, of Mrs. Merteneit, Mrs. Yaeger, and Mr. Howlett, only Mrs. Merteneit was actively involved in the campaign. And as noted, only Mrs. Merteneit was indicted. Further, Mrs. Monzula testified at her deposition that numerous signatures on the petitions were declared invalid because the individuals who signed were not registered voters, and others were declared invalid because the signers had signed more than once. Both categories of individuals might have been liable for prosecution for violation of § 3599.13, Ohio Revised Code, but large numbers of indictments were not issued. And both Byron and Monzula testified that Mrs. Yaeger

---

**6.** Discriminatory prosecution actions are founded in the Equal Protection Clause of the Fourteenth Amendment, and the fundamental right which forms the basis for such actions is the right to be free of irrational or impermissible classifications. Malicious prosecution actions are founded in the Due Process Clause of the Fourteenth Amendment, and the right which forms the basis for such actions is the right to be free of prosecution unless there is some factual basis for that prosecution. Since entirely different rights are at stake in the two types of actions, the elements of each action are different.

had admitted to Mayor Schaefer that she forged her husband's signature on the petitions. She was not indicted.

The record shows that the only individuals who were indicted were those who were actively involved in the recall campaign. From these facts, a jury could conclude that the plaintiffs in this case were unlawfully prosecuted; that they were selected for prosecution as punishment for their exercise of First Amendment rights. A jury could, of course, conclude otherwise, but because a determination might be made in plaintiffs' favor, defendants' motion for summary judgment on the merits of this case must be, and it is, denied.

### 4. Motion for Summary Judgment on Ground of Collateral Estoppel

■ Defendant next moved for summary judgment based on the doctrine of collateral estoppel. They claim there was certain concurrent litigation between the parties, a libel action in the Lake County Common Pleas Court. The defamation action and this lawsuit were filed at approximately the same time, but because of the proceedings in the Court of Appeals in this case, the libel action reached trial first.

In the libel action, all plaintiffs herein sought damages from all defendants herein because of the publication of defendant Byron's September 15 letter to Secretary of State Brown. The defendant mayor, councilmen, and clerk were dismissed from the lawsuit prior to trial, and at the close of plaintiffs' evidence the state trial judge directed a verdict in Byron's favor.

A transcript of the state judge's ruling from the bench in Byron's favor is attached to defendants' motion for summary judgment. In his ruling, dated February 14, 1980, the judge concluded that the contents of the September 15 letter was not defamatory as a matter of law; that numerous privileges allowed Byron to make the statements therein without exposing himself to liability; and that the statements were true. Equating such a holding as equal to a

criminal conviction, or at the very least to a judicial finding of probable cause, defendants assert that plaintiffs are estopped from now claiming lack of probable cause, and that this malicious prosecution action must fail.

This argument is both incorrect and wide of the mark. As noted, probable cause or the lack of it is not relevant in a discriminatory prosecution action. Further, because numerous grounds were cited by the state trial judge, it is not clear whether his finding of truth was a necessary and essential part of the judgment. Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 341 (C.A. 6, 1982). The motion for summary judgment based on the doctrine of collateral estoppel is denied.

### 5. Motion for Summary Judgment on Ground of Res Judicata

■ Defendants' final claim is contained in a supplemental motion for summary judgment filed with leave of court on May 17, 1982. In the supplemental motion, defendants assert that plaintiffs' claims in this action are barred by the doctrine of res judicata, in that the civil rights claim asserted here was not litigated in the state court defamation action. Defendants assert that since the civil rights claims could have been litigated in the prior action, res judicata bars such claims here.

In opposition, plaintiffs allege they were unable to assert their civil rights claim in the state action, and therefore should not be prevented from doing so in this court.

The Sixth Circuit Court of Appeals has consistently applied the doctrine of res judicata in civil rights cases. E.g., Silcox v. United Trucking Service, Inc., 687 F.2d 848 (C.A. 6, 1982); Castorr v. Brundage, 674 F.2d 531 (C.A. 6, 1982); Cemer v. Marathon Oil Co., 583 F.2d 830 (C.A. 6, 1978); Coogan v. Cincinnati Bar Association, 431 F.2d 1209 (C.A. 6, 1970).[7] The doctrine of res judicata does not, however, bar the civil rights claim asserted in this action.

---

**7.** There is a special exception to the doctrine of res judicata in civil rights cases, where application of a state court judgment to bar a federal

claim would fly "in the face of more important federal policies. . . ." Castorr, at 674 F.2d 536.

### a. *Identity of Claims*

As the Court of Appeals noted in *Silcox, supra,* at 852:

> In *Cemer, supra,* we held that a final decision on a plaintiff's age discrimination suit was res judicata as to his subsequent breach of contract action, where both suits sought to remedy the same wrong.... [W]here two successive suits seeks recovery for the same injury, a judgment on the merits operates as a bar to the later suit, even though a different theory of recovery is advanced in the second suit.

It appears that the claim which was litigated in the state courts is not the claim which is the subject of this lawsuit. In the state trial, plaintiffs asserted that they were defamed by publication of Byron's letter of September 15, 1976. In this action, they claim that their indictment in December of that year violated their First and Fourteenth Amendment rights. While the two claims are somewhat factually interrelated, the rights alleged to have been injured are distinct.[8] The time of injury differed by more than three months, and the proof required of plaintiffs for each claim is not the same. *Silcox, supra; Cemer, supra,* at 583 F.2d 832, *Francis H. Fisher, Inc. v. Midwestco Enterprises, Inc.,* 477 F.Supp. 169, 172–73 (S.D.Ohio, 1979). Since the claims are different, res judicata does not bar this action. *Ibid.,* and see 1B *Moore's Federal Practice,* ¶ 0.410[1], n. 10, and authority cited therein.

### b. *Joinder of Claims*

Defendants do not, however, base their *res judicata* assertions wholly on the basis that the same claim is involved. Instead, they allege that the doctrine bars all claims which plaintiffs could have asserted in the state court action, including the civil rights claim asserted here. There are three reasons why this allegation lacks merit. First, defendants misstate the doctrine. Second, they ignore one of its major exceptions. Third, they assume a crucial fact which is in serious dispute.

The generally accepted black-letter rule of *res judicata,* 1B *Moore's Federal Practice,* ¶ 0.410, was set forth in *Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1877):

> As to the same cause of action, [a final judgment on the merits by a court of competent jurisdiction] constitutes an absolute bar to a subsequent [lawsuit]. It is a finality as to the claim or demand in controversy, ... not only as to every matter offered and received to sustain or defeat the claim or demand, *but as to any other admissible matter which might have been offered for that purpose.* (Emphasis added).

The doctrine of *res judicata* thus does not impose upon plaintiffs a rule requiring the mandatory joinder of claims. The doctrine merely calls upon a party to present all of his proof and assert all of his theories of recovery or defense when litigating any claim, as he will be prevented from doing so thereafter. *Harrington v. Vandalia-Butler Board of Education,* 649 F.2d 434 (C.A. 6, 1981); *Cemer, supra.* The doctrine does not, as defendants assert, require a plaintiff to join into one action all of the separate causes of action which he may have against a particular defendant. *See,* 1B *Moore's Federal Practice,* ¶ 0.410[2], and the extensive authority cited therein.

Second, even if the doctrine did require plaintiffs to consolidate their claims into one lawsuit, there is an exception to the rule which plainly applies under the facts of this case. The doctrine of *res judicata* has a corollary rule prohibiting the splitting of claims, i.e., seeking in separate lawsuits to remedy different aspects of the same injury. *Restatement, Judgments,* § 62. If a claim is split, a defending party may, by proper objection, require consolidation of all the actions into one lawsuit. But comment (m) to § 62 makes plain that:

> Where plaintiff brings separate actions based upon different items included in his

---

**8.** The Constitution does not protect an individual's reputation from defamation. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The Constitution does, however, guarantee the freedom of political speech and activity, and the equal protection of the laws.

claim, and in none of the actions does the defendant make the objection that another action is pending based upon the same claim, a judgment ... in one of the actions does not preclude [plaintiff] from obtaining judgment in the other actions. In such case the failure of the defendant to object to the splitting of plaintiff's claim is effective as a consent to the splitting of the claim.

*See, also, Weekes v. Atlantic International Insurance Co.,* 370 F.2d 264 (C.A. 9, 1966).

Thus, defendants have waited too long to insist that the entire dispute between the parties be decided in one lawsuit. Having consented by inaction to separate trials of the defamation and civil rights issues, defendants cannot now assert a victory in the state courts as a technical bar to the federal claim.

And third, defendants assume that plaintiffs could have asserted their civil rights claim in the state action. They cite *Jackson v. Kurtz,* 65 Ohio App.2d 152, 416 N.E.2d 1064 (Hamilton Co., 1979), and two unreported decisions,[9] as holding that the courts of Ohio have jurisdiction over § 1983 claims. There appears, however, to be substantial dispute within Ohio's judicial system as to whether the state courts will accept jurisdiction over federal civil rights claims.

In *Wheeler v. General Motors Corp.,* No. 5889, Court of Appeals for Montgomery County, decision of January 12, 1979, it was held that Ohio's courts have no jurisdiction to hear a claim arising pursuant to 42 U.S.C. § 1985. In its decision, the Court noted that the jurisdiction of the state's trial level courts is limited by Article IV, §§ 1, 4, of the Ohio Constitution to that established "by law," and held that the Ohio General Assembly was exclusively vested with authority to establish that "law." The *Wheeler* court specifically held that the federal Congress has no authority to expand upon the jurisdiction of the state courts. In subsequent unreported decisions,[10] the Montgomery County Court of Appeals has extended that rationale and holding to § 1983 actions.

It does not appear that the Ohio Supreme Court has resolved this conflict between its appellate circuits; this Court is ill-equipped to make such a sensitive policy decision involving the operations of the state's judicial system, and will decline to do so. *Judice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1979).

Plaintiffs' ability to have presented their civil rights claims in the previous state litigation is a fact which is crucial to the application of *res judicata.* There is a clear question as to that crucial fact at this juncture, and for that reason alone, summary judgment cannot issue.

In summary, the doctrine of *res judicata* does not apply in this case, as the same claim was not involved in the state court action and the doctrine does not require the joinder of claims. Even if *res judicata* applied, the facts bring this case well within an exception to the doctrine. And there is substantial dispute as to whether the civil rights claim could have been heard in the state courts in the first instance.

Therefore, the earlier state court finding in the defamation action does not present a

9. *Bossong v. Cincinnati,* No. C–800675, Court of Appeals for Hamilton County, decision of October 7, 1981, 55 Ohio State Bar Association Report, No. 4 (February 8, 1982), p. 277 (summary); *Arps v. City of Defiance,* No. 4–81–3, Court of Appeals for Defiance County, decision of July 13, 1981 (unverified).

10. *Shapiro v. Dayton,* No. 7183, Court of Appeals for Montgomery County, decision of October 6, 1981; *Johnson v. Dayton,* No. 7184, Court of Appeals for Montgomery County, decision of October 6, 1981; as to both see 55 Ohio State Bar Association Report No. 18 (May 3, 1982), pp. 720–21 (summary). *See, also, Weltchek v. City of Toledo,* No. L–80–374, Court of Appeals for Lucas County, decision of July 2, 1981, 55 Ohio State Bar Association Report No. 6 (January 25, 1982), p. 176 (summary), in which an action alleging malicious prosecution was dismissed, and the dismissal was affirmed, on grounds of sovereign immunity. The affirmance on such grounds necessarily excludes the possibility of jurisdiction founded in § 1983. And, *c.f., Mossman v. Donahey,* 46 Ohio St.2d 1 at 18–20, 346 N.E.2d 305 (Wm. B. Brown, concurring) (1976).

bar to this lawsuit. Summary judgment on the issue of *res judicata* is denied.

### D. CONCLUSION

For the reasons stated herein, the first count of the second amended complaint is dismissed. The City of Willoughby Hills is dismissed as a party defendant. The motions by the individual defendants to dismiss the second count and for summary judgment thereon are denied.

IT IS SO ORDERED.