**UNITED STATES of America, Plaintiff,**

v.

**S. Robert DAVIS, Defendant.**

**No. CR–2–86–063.**

United States District Court,
S.D. Ohio, E.D.

Oct. 12, 1988.

Dale E. Williams, Jr., Asst. U.S. Atty., Columbus, Ohio, for plaintiff.

John J. Chester, Chester, Hoffman & Willcox, Columbus, Ohio, Arthur F. Mathews, Stephen W. Preston, W. Hardy Callcott, Christopher J. Melcher, Wilmer, Cutler & Pickering, Washington, D.C., for defendant.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter comes before the Court to consider the various motions of the defendant, S. Robert Davis, and the government's responses thereto.

On October 6, 1986, a jury convicted S. Robert Davis for mail fraud, 18 U.S.C. § 1341 (1982), in connection with an alleged scheme with the city manager of Upper Arlington, Harold Hyrne, to inflate the cost of a waterline installed in the Squirrel Bend subdivision. According to the Indictment, Hyrne then passed on the inflated charges to property owners who wished to "tap-in" to the waterline.

The first indictment charged Davis with "mail fraud": he allegedly defrauded the citizens of Upper Arlington "of their rights to honest and faithful services from their public officials." Indictment, at 1. After a jury convicted Davis for charges in the Indictment, however, the Supreme Court rejected this "intangible rights" theory of mail fraud. *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). According to *McNally*, the statute only concerns the deprivation of "money or property."

In following *McNally*, the Court of Appeals reversed Davis' conviction. *United States v. Davis*, 841 F.2d 1127 (6th Cir. 1988). The government then reindicted Davis under the proper theory of mail fraud, stating that he had devised a "scheme or artifice to defraud, and to obtain money by means of false and fraudulent pretenses and representations." Superseding Indictment, at 1.

Before going to trial on the charges in the Superseding Indictment, the defendant filed various pretrial motions. The Court will address each in turn.

## I.

First, the defendant moves for leave to file reply memoranda before the Court considers two of the defendant's motions now before the Court. This Court's pretrial order stated clearly, "Reply briefs will not be filed." *United States v. Davis*, No. CR-2-86-063, at 2 (S.D.Ohio July 15, 1988) (pretrial order).

The defendant correctly notes that he does raise "complex and novel questions" in his motions. Motion for Leave to File Reply Memoranda. Despite these complexities, however, the Court finds that the defendant had an adequate opportunity to address the issues he raised and finds that rebuttals are not necessary. Accordingly, the defendant's Motion for Leave to File Reply Memoranda is DENIED.

## II.

Second, the defendant moves the Court for a hearing on some of the motions considered herein. Although these motions "implicate fundamental constitutional rights," the Court finds that the written memoranda adequately apprise it of the issues involved and that oral argument on these motions would be unnecessary for a "just resolution of this case." Motion for a Hearing on Certain Motions, at 2. Thus, the defendant's motion is DENIED.

## III.

Third, the defendant moves for dismissal of the Superseding Indictment because this action violates the Double Jeopardy Clause. The first indictment charges Davis with defrauding the citizens of Upper Arlington "of their rights to honest and faithful services from their public officials." Indictment, at 1. After the Court of Appeals reversed the defendant's conviction, however, the government reindicted Davis, charging him with devising a fraudulent scheme to obtain money. Davis claims that this second action violated the defendant's rights under the Double Jeopardy Clause.

The Double Jeopardy Clause provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The purpose of the Double Jeopardy Clause is to preclude the state from making "repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he will be found guilty." *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

The defendant argues that when the government presents an invalid theory of liability to the jury, a failing for which the government is responsible, any conviction would not constitute a verdict on the relevant, viable theory of liability. That is, the first trial ends without a verdict on the proper theory. A retrial on the charge

under the proper theory, the defendant argues, would be a violation of the Double Jeopardy Clause. *See Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir.1988).

Here, the defendant claims that since the government presented the jury with the "intangible rights" theory and not the "money or property" theory, the jury's conviction was not under the correct theory. As far as the "money or property" theory is concerned, then, the jury neither acquitted nor convicted Davis. The defendant argues that the government could have pursued both theories, but chose to pursue this action under the "intangible rights" theory. Davis concludes that the government is responsible for the "aborted outcome," *id.* at 1407, and therefore it effectively terminated Davis' liability, *see id.* at 1408. Having chosen to present the wrong theory, the argument goes, the government is not entitled to a second chance to convict. *See id.* at 1409.

The government counters by claiming that the Sixth Circuit has already held that the government may retry, under the "money or property" theory of mail fraud, a defendant whom the government originally indicted under the "intangible rights" theory. *See United States v. Stack*, 853 F.2d 436, 438 (6th Cir.1988). Like the case at bar, *Stack* reversed a defendant's mail fraud convictions because the government relied on the invalid "intangible rights" theory. The court noted, though, "that since the conviction is not reversed due to insufficient evidence the government is not precluded from indicting defendant on a permissible theory of mail fraud." *Id.* (citing *Montana v. Hall*, 481 U.S. 400, 107 S.Ct. 1825, 1826–27, 95 L.Ed.2d 354 (1987)).

On the face of it, *Stack* addresses the very issue now before the Court: whether the government may retry a defendant, convicted under the "intangible rights" theory of mail fraud, under a "money or property" theory. Thus, the procedural posture of *Stack* more closely resembles the case at bar than *Saylor* and thus is highly persuasive.[1] This language, however, is *dicta*.

1. The defendant might claim certain distinc- tions between *Stack* and the case at bar. First,

The parties had not placed the double jeopardy issue before the court and the decision merely reversed the convictions under the "intangible rights" theory. Thus, the *Stack* language is not controlling. The Court must therefore "go back to the basic principles of double jeopardy law to attempt a resolution." *Saylor*, 845 F.2d at 1405.

## A. Traditional Analysis of Double Jeopardy Law

Under traditional double jeopardy doctrine, the courts have noted the potential unconstitutionality of trying a defendant after an appellate court has reversed a conviction. They established a dichotomy between retrials after the appellate court reversed for an insufficiency of the evidence on one hand and for other kinds of reversals.[2] Reversals in the first category, insufficiency of the evidence, are the equivalent of an acquittal, and the Double Jeopardy Clause bars a second trial.

A reversal of a conviction for any other reason besides insufficiency, however, does not bar a retrial of the defendant.[3] Significantly, the courts place this second category of reversals under the general rubric of "trial error." *See Burks v. United States*, 437 U.S. 1, 14 & n. 8, 98 S.Ct. 2141, 2148 & n. 8, 57 L.Ed.2d 1 (1978).

The *Burks* Court lists examples of "trial error." The Court noted that in *Hopt v. Utah*, 120 U.S. 430, 7 S.Ct. 614, 30 L.Ed. 708 (1887), trial error justifying reversal consisted of "improper instruction, . . . absence of the accused during a portion of the trial, improper hearsay testimony received, . . . and inadequate record due to failure to record jury instructions." *Id.* 437 U.S. at 14 n. 8, 98 S.Ct. at 2148 & n. 8.

Also, the Court noted that the reversal in *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896) was for trial error. The Court had reversed the convictions of two alleged murderers on the grounds of fatal errors in the indictment. To wit, the trial error committed was a

---

the defendant could argue that the *Stack* court was not faced with a contention that the evidence before it was insufficient, while here, the defendant did challenge the evidentiary sufficiency. Under traditional double jeopardy doctrine, as long as an appellate court reverses for any reason except for evidentiary insufficiency, which includes the possibility that the court might not reach the question, reindictment is permissible. *See infra* notes 2–7 and accompanying text.

It is not whether the parties raised the sufficiency question that counts, then, but rather whether the Court of Appeals relied on the issue to reverse the conviction. Under *Stack* and this case, the court of appeals reversed for reasons other than insufficient evidence; thus, under traditional doctrine, the government may file a new indictment.

Second, the defendant might claim that the crucial distinction is whether the court dismissed the faulty indictment. In *Stack*, the court did not dismiss the flawed indictment, but here, this Court did dismiss. Jeopardy terminated here, the argument goes, after the dismissal.

The crucial question of when jeopardy terminates, however, does not turn on such a formalistic distinction as that between cases in which the court dismissed the indictment and those where it did not. The dismissal of an indictment does not bar a second indictment automatically. Indeed the Supreme Court has permitted reindictments after a court has dismissed the

first indictment. *See Montana v. Hall*, 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987); *United States v. Ewell*, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

2. The *Saylor* court acknowledged that "it is . . . axiomatic that the only time a reversal of a conviction is the equivalent of an acquittal as far as the applicability of the Double Jeopardy Clause's bar against retrial is concerned, is where the reversal is based on insufficiency of the evidence." *Saylor v. Cornelius*, 845 F.2d 1401, 1405 (6th Cir.1988) (citing *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)).

3. "Double jeopardy principles do not bar a retrial if a conviction is reversed because of error at the trial if the evidence was sufficient to support the verdict." 2 Wright, *Federal Practice and Procedure* § 470, at 679 (1982). For "the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." *North Carolina v. Pearce*, 395 U.S. 711, 721, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969). "In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant." *Burks v. United States*, 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978).

"failure to dismiss a faulty indictment." *Burks*, 437 U.S. at 14, 98 S.Ct. at 2148.

Applying the traditional double jeopardy analysis, the government would prevail. The double jeopardy bar applies only if the reversal is for insufficiency of the evidence. Here, the reversal was not for evidentiary insufficiency. The Court of Appeals did not reach the sufficiency question. *See United States v. Davis*, 841 F.2d 1127 (6th Cir.1988).[4] Rather, this Court's failure to dismiss the indictment would be a "trial error." Therefore, it follows that the Double Jeopardy Clause does not bar reprosecution.

An analogous case is *United States v. Ewell*, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed. 2d 627 (1966), where a district court dismissed a defective indictment after the defendants had pleaded guilty. The court of appeals previously had ruled, in an unrelated case, that indictments under the relevant law, which prohibited the sale of narcotics without the proper form,[5] should include the name of the purchaser, which the first indictment did not.

The government filed a second indictment under the same law and, in addition, alleged violations of a law prohibiting sales of narcotics without the original stamped package.[6] The Court held that the government could prosecute under either statute alleged in the corrected indictment.

The *Ewell* Court relied in its reasoning on *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), which is also analogous to this case. In *Ball*, a murder indictment was fatally defective because it failed to allege the time and place that the victim had died. The Court had earlier reversed the convictions of the defendants and the lower court had dismissed the indictment. The Court held that the defendants could be tried again under a new indictment.[7]

### B. The Saylor *Court's Departure from the Traditional Analysis*

*Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir.1988), departs from the traditional double jeopardy analysis. The traditional analysis permits retrial after convictions if the court of appeals reversed for any grounds except evidentiary insufficiency. The Supreme Court has reasoned that "the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." *North Carolina v. Pearce*, 395 U.S. 711, 721, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969). The Court refers to the broad category of reversals not due to insufficiencies as "trial error."

*Saylor*, however, narrows the concept of "trial error" to only those cases reversed on grounds of a "procedural error,"[8] despite the Supreme Court's broad definition, *see Burks*, 437 U.S. at 14, 98 S.Ct. at 2148.

---

**4.** In reversing the conviction, the court simply did not reach the question of evidentiary sufficiency. The court merely reversed on the grounds of insufficiency of the "intangible rights" theory. This holding does not require the court to assume that the Sixth Circuit implicitly reached the sufficiency question and ruled in favor of the government. Nor is it now necessary to for this Court to hold a mini-appeal to decide whether the evidence was sufficient.

The traditional analysis merely looks to the basis of the reversal announced by the appellate court. If the appeals court reversed for any reason besides evidentiary insufficiency, reindictment is permissible. Here, the Sixth Circuit reversed due to the inadequacy of the "intangible rights" theory, not insufficiency of the evidence. Therefore, the traditional analysis would permit reindictment.

**5.** 26 U.S.C. § 4705(a) (1964) (repealed 1970).

**6.** 26 U.S.C. § 4704(a) (1964) (repealed 1970).

**7.** "[A] defendant, who procures a judgement against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offence of which he had been convicted." *Id.* at 672, 16 S.Ct. at 1195, *quoted with approval in Burks v. United States*, 437 U.S. 1, 13, 98 S.Ct. 2141, 2148, 57 L.Ed.2d 1 (1978).

**8.** At one point, *Saylor* refers to the general concept of "trial error" by calling it "instructional error." "[T]his is not a standard 'instructional error' case.... In 'instructional error' cases we know that the jury thought there was sufficient evidence to convict *on the offense charged* because the jury returned a guilty verdict." *Id.* at 1404. In the same paragraph, the court went on to call this catchall category "procedural error": "However, due to a procedural error, the defendant is entitled to a retrial." *Id.*

Having narrowed the "trial error" concept, the *Saylor* court created the new category of errors, non-procedural mistakes not arising from insufficient evidence. This category would include errors stemming from the submission of the incorrect theory of liability to the jury. For these cases, the court crafted a new test; a reversal of a conviction under *Saylor*, then, does not necessarily wipe the slate clean.

In *Saylor*, the prosecutor charged the defendant with murder. The prosecutor failed to prompt the judge to charge the jury with the proper theory of murder, accomplice liability, and acquiesced in the charge of conspiracy liability, for which there was no evidence. Since the judge charged the jury with the wrong theory, the court reasoned that the proper theory was not before the jury. Therefore, the trial ended "without either an explicit conviction or an explicit acquittal." *Saylor*, 845 F.2d at 1406.

*Saylor* abandons the traditional rule that any reversal besides insufficiency of the evidence is not the equivalent of an acquittal. Instead, when a trial is "aborted" in this way, *Saylor* states that the court's task is to determine whether the termination was a result of "the defendant's deliberate election" or "as a result of the prosecution's action." *Id.* at 1407.

If the defendant is responsible for the failure to submit the proper theory to the jury, then the Double Jeopardy Clause does not preclude reprosecution. *Id.* On the other hand, where the prosecution is at fault in the omission of the proper theory from the jury instructions, then the Double Jeopardy Clause bars a new trial. For this analysis, the court relied upon *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978).

This Court is skeptical whether the *Saylor* court was justified in relying on *United States v. Scott* for the creation of its new test and its new category of trial errors. First, *Scott* concerned the question of whether the government could appeal two theories of liability dismissed by the district court for prejudicial preindictment delay after an acquittal. *Saylor*, however, concerned a reindictment after the successful appeal from a conviction. *Scott* noted that the body of case authority relevant to reindictments after reversed convictions is entirely separate from that germane to government appeals from acquittals. *Scott*, 437 U.S. at 82, 98 S.Ct. at 2189.[9] Therefore, *Scott* would not be controlling in a case like *Saylor*, nor would it provide good authority for the *Saylor* test.[10] *Scott* addresses only the situation of mid-trial termination of the proceedings in a manner favorable to the defendant. *See id.* at 100–01, 98 S.Ct. at 2198.

Second, the distinction between an appeal from an acquittal and a new trial after the successful appeal of a conviction casts doubt on the *Saylor* test. In cases where the proper theory was not before the jury, *Saylor* would not distinguish between juries that convict and those that acquit on the charges before them. The *Saylor* court would merely inquire into the cause of the withholding, the defendant's decision or the prosecution's neglect. Yet the Supreme Court may not ratify the *Saylor* court's identical treatment of acquittals and convictions, for "the law attaches particular significance to an acquittal." *Scott*, 437 U.S. at 91, 98 S.Ct. at 2194.

*Scott* explained the importance of the distinction between acquittals and convictions for the purpose of double jeopardy doctrine. "To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that 'even though innocent he may be found guilty.'" *Id.* (citation omitted). "On the other hand,

---

9. "Although *Ball* firmly establishes that a successful appeal of a conviction precludes a subsequent plea of double jeopardy, the opinion shed no light on whether a judgement of acquittal could be reversed on appeal consistently with the Double Jeopardy Clause." *Id.*

10. The statutory law governing government appeals in criminal cases complicated the resolution of cases concerning government appeals and further served to insulate such cases from those involving reindictments after reversed convictions. *See id.*

to require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect." *Id.*

That is, the Supreme Court places a greater burden on the government when it attempts to appeal an acquittal than when it wants to retry the defendant after an appellate court reverses a conviction. *See id.* The defendant, by contrast, has the greater burden in resisting reindictment after a reversed conviction than in preventing an appeal of an acquittal. The *Saylor* court, however, blurs this distinction and crafts a test which does not account for these different burdens placed on the parties.

Indeed, the *Saylor* court's main concern seemed to be that a prosecutor could manipulate the trial process by indicting on several theories, introducing evidence on each, and then presenting only selected ones to the jury. The prosecution could hold the other theories "in reserve for a subsequent or improved effort." *Saylor,* 845 F.2d at 1408. That is, the court was afraid that a defendant could be retried "no matter what the outcome on the count that was charged." *Id.* This proposition is incorrect and the court's fear is simply unfounded. Again, if the defendant secured an acquittal on the theory charged, or if the government procured an unreversed conviction, the Double Jeopardy Clause would bar a new trial for another offense arising out of the same transaction. *See United States v. Ewell,* 383 U.S. 116, 124, 86 S.Ct. 773, 778, 15 L.Ed.2d 627 (1966). If the defendant were convicted and the appeals court reversed, though, the traditional analysis would permit reindictment.[11]

Finally, *Saylor* seems to read the *Scott* Court's discussion of the factors which per-

mit appeal of a dismissal as impliedly limiting the ability of the government to retry after the reversal of a conviction. *Scott* bolstered its argument, that the government may appeal the dismissal of two counts for preindictment delay, by noting that the government was willing to place the evidence before the jury, but that the defendant successfully prevented submission for a legal reason unrelated to guilt or innocence. These factors were a *sufficient* condition for renewed government action, an appeal. *Saylor,* however, reads these factors to be *necessary* conditions for renewed action, which does not follow at all.

That is, just because the government may appeal after a mid-trial termination if the defendant was responsible,[12] it does not follow that the government may not retry the defendant if the government is responsible for aborting the proceedings. *Scott,* then, was not a case which limited the government's right to retry a defendant, but rather it expanded the unambiguous scope of the government's right to appeal certain trial court decisions.

It was the *Saylor* court that made the inferential leap from allowing an appeal where the defendant terminated the trial to prohibiting a retrial where the prosecutor was negligent. *Saylor* crafted this new test, then, without any real support from *Scott.* Nonetheless, this case is controlling authority in the Sixth Circuit. Despite this Court's misgivings with the *Saylor* test, then, the consideration of double jeopardy here must turn on application of this test to the case at bar.

### C. *Application of the* Saylor *Test*

■ The *Saylor* test requires the Court to determine whether the trial was "aborted as a result of the defendant's deliberate election" or "as a result of the prosecution's action." *Saylor v. Cornelius,* 845 F.2d 1401, 1407 (6th Cir.1988). In *Saylor,*

---

11. In rejecting the defendant's double jeopardy claim, the *Ewell* court stated, "Here the Government is not attempting to prosecute a defendant for an allegedly different offense in the face of an acquittal or an unreversed conviction for another offense arising out of the same transaction." *Id.*

12. More accurately, the government may appeal a mid-trial termination if and only if the termination was not for insufficiency of the evidence.

the prosecution did not object when the judge charged the jury only with conspiracy liability, but not accomplice liability. The prosecution was aware of the problem since the defendant had raised the lack of conspiracy evidence when he objected to the instructions.

The court drew an analogy between the prosecution's "poor preparation" and "illegitimate prosecutorial behavior." *Id.* at 1408. The prosecutor's conduct was "in error" and the failure to object to the erroneous jury instructions was "a fit of absentmindedness." *Id.* This negligence terminated Saylor's liability.

Here, however, the Court does not find that the prosecution's omission of the "money or property" theory from the indictment rose to the level of "poor preparation" or "a fit of absentmindedness." Although the government intentionally chose the "intangible rights" theory and could have advanced both theories, it was relying on the case law controlling at that time which supported actions under the "intangible rights" theory alone. *See United States v. Gray*, 790 F.2d 1290 (6th Cir. 1986), *rev'd sub nom. McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987).

It was only after the Supreme Court rejected the theory that the Sixth Circuit could say in retrospect that the government had submitted an invalid theory to the jury. The invalidation of the government's theory was retroactive, and therefore the court cannot charge the government with the knowledge that the "intangible rights" theory was invalid. This Court simply cannot fault the government for failing to prognosticate accurately Supreme Court decisions.

Although in retrospect, the government's reliance on the "intangible rights" theory was "in error," because the Supreme Court rejected the theory, this Court cannot find therefore that the government's reliance on a theory then supported by the case law was negligence. Nor is the omission sufficiently serious to warrant attaching "fault" to the prosecution and barring a second trial.

Thus, the best characterization of this case is that neither party was at fault. The government is not at fault when it relied on then-current case law to submit the "intangible rights" theory to the jury; and the defendant is not at fault since he did not take action to prevent the government from presenting the "money or property" theory. If anyone is at "fault," the real responsibility lies with the Supreme Court for repudiating the "intangible rights" theory.

The defendant might argue, though, that *Saylor* requires the Court to assign fault to one of the parties; there would be no situation where both government and defendant are without fault. The *Saylor* court, however, never made this claim. In *Saylor*, the court assigned fault to the prosecution for permitting the judge to charge the jury with the unsupported conspiracy liability theory, knowing that the evidence showed only accomplice liability. The court was silent, however, as to the proper result when neither party was at fault.

This Court must therefore determine whether the Double Jeopardy Clause bars reindictment when an appeals court reverses the defendant's conviction due to a change in the controlling case law. In making this decision, the distinction between appeals from acquittals and reindictments after a reversed conviction is helpful. Under traditional analysis, the defendant has a greater burden in preventing reindictment than in resisting an appeal and reindictment would be permissible. Accordingly, the Court holds that the defendant should bear the burden of a change in case authority after a reversed conviction, despite *Saylor*.

In conclusion, the Double Jeopardy Clause does not bar a trial of Davis. Under traditional double jeopardy analysis, the reversal of the defendant's conviction does not result in an acquittal unless an appeals court reverses for insufficient evidence, which is not the case here. And under a *Saylor* analysis, the Double Jeopardy Clause bars a second trial if the prosecutor was negligent in failing to submit the

proper theory to the jury. Here, though, the government's failure to present the "money or property" theory stems in large part from its reliance on the then-controlling case law permitting the intangible rights theory. Given the history of the Supreme Court's traditional permissive posture in allowing retrials after reversals of convictions not due to evidentiary insufficiency, the defendant should bear the burden of a change of controlling case law which retroactively invalidates the theory which came before the jury.

The Court, then, finds the defendant's Motion to Dismiss the Superseding Indictment for Violations of the Double Jeopardy Clause to be without merit, and it is, therefore, DENIED.

## IV.

■ Fourth, the defendant moves for dismissal of the Superseding Indictment, arguing that the statute of limitations bars the action against him. During the pendency of the first indictment, the statute of limitations was tolled. When the Court dismissed the Indictment on June 27, 1988, however, the statute of limitations would have run, unless the government can show that the "saving statute" applies, 18 U.S.C. § 3288 (1982).

Section 3288 provides:

Whenever an indictment is dismissed for any error, defect, or irregularity with respect to the grand jury, or an indictment or information filed after the defendant waives in open court prosecution by indictment is found otherwise defective or insufficient for any cause, after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, or, if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular grand jury is convened, which new indictment shall not be barred by any statute of limitations.

Section 3288 would preclude application of the statute of limitations to this case since the grand jury returned the Superseding Indictment on July 7, 1988, ten days after the Court dismissed the Indictment and thus within the six months period provided by this statute.

The defendant argues that section 3288 is not applicable for three reasons. First, "the original Indictment was not dismissed 'for any error, defect, or irregularity with respect to the grand jury.'" Motion to Dismiss Based Upon Expiration of the Applicable Five–Year Statute of Limitations, at 2. Davis argues that section 3288 is available only when a court dismisses for one of these grand jury defects. Second, "the charges in the Superseding Indictment contain too substantial a variance from the 'intangible rights' fraud theory charged in the original Indictment to fall within the umbra of the 'saving statute.'" *Id.* Finally, the defendant argues that section 3288 "must be strictly construed against the government and in favor of defendant Davis pursuant to the federal 'rule of lenity.'" *Id.* Therefore, section 3288 "does not apply to reindictment for the same offense pursuant to a new scheme or theory after a verdict reached following a full jury trial pursuant to a different scheme or theory." *Id.*

The defendant's first claim is partially correct: the Court did not dismiss the original Indictment for any error, defect, or irregularity with respect to the grand jury. The government admits as much, but does not rely on this portion of section 3288 to support their argument that the statute applies. Instead, the government relies on the language stating that section 3288 allows for a six month extension whenever "an indictment ... is found otherwise defective or insufficient for any cause." Thus, the defendant's statement, although accurate, cannot defeat application of this statute altogether.

The defendant is not correct, moreover, in arguing that section 3288 is available *only if* the dismissal involves irregularities or defects in the grand jury. As stated above, the government relies on the second

clause of section 3288, which permits an extension where the indictment is "otherwise defective or insufficient for any cause." Davis argues that this second clause refers to technical errors referring only to grand juries. In support, the defendant invokes the general rule of *esjudem generis,* arguing that the Court should construe the general words "otherwise defective" and "insufficient for any cause" in the second clause as embracing the kind of flaws enumerated by the proceeding specific first clause, to wit, grand jury defects.

Such a construction renders this phrase superfluous; having already covered grand jury irregularities in the first clause,[13] if the words "defective" and "insufficient" refer again only to grand juries, they would add nothing to the first clause. In statutory construction, the Court must strive to give effect to each phrase and avoid constructions that render statutory language superfluous. *See, e.g., Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985). Thus, the Court holds that the second clause allows return of a new indictment for reasons other than grand jury defects. *United States v. Charnay,* 537 F.2d 341, 355 (9th Cir.), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 527, 97 S.Ct. 528, 50 L.Ed.2d 610 (1976).[14]

The second argument concerns the government's change of theory from one based on the deprivation of "intangible rights" to one grounded on a scheme to gain "money or property." The defendant claims that the Superseding Indictment broadens the charges contained in the Indictment to such an extent that an application of section 3288 would be unfair to the defendant.

The Court, however, finds that the Superseding Indictment did not impermissibly amend the Indictment. As the government correctly notes, the major change of the Superseding Indictment is to delete the "intangible rights" language and replace it by a formulation preferred by the Court in *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The Superseding Indictment charges the same acts and offenses charged in the Indictment and differs only in the legal theory stated and in the clarificatory language of the Superseding Indictment, explaining that the scheme was for the collection of money.

In short, "a reading of the two indictments shows that essentially the same facts were used to charge almost identical offenses." *Charnay,* 537 F.2d at 354. Although the government had to abandon the intangible rights theory, it does not follow that a simple of change of theory automatically bars reindictment. "Allowing a second indictment to remedy legal deficiencies present in the first is the very purpose for which section 3288 was enacted." *Id.*

■ Finally, the defendant argues that the saving statute should not apply after a jury trial on the original indictment. The Court holds, however, that section 3288 applies whether the grand jury presents the Superseding Indictment before or after the trial. The plain language of the statute does not distinguish between reindictments before or after trial or between types of dismissals; and the legislative history is silent as to a distinction between pre- and post-trial reindictments.[15] *See generally* S.Rep. No. 1414, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S.Code Cong. & Admin.News 3257, 3258–60. Absent a textual warrant for making such a distinction, then, the court cannot dismiss the indictment.

---

**13.** The first clause provides: "Whenever an indictment is dismissed for any error, defect, or irregularity with respect to the grand jury." § 3288.

**14.** The *Charnay* court stated:
"We conclude from the language of § 3288, as well as from the section's history, that a second indictment may properly be returned within the prescribed six-months period where the dismissal is due to a legal defect, as well as in those cases where the dismissal results from defects or irregularities in the grand jury."
*Id.*

**15.** Given the clarity of the statute, the rule of lenity does not apply here.

The defendant's motion to dismiss based upon expiration of the applicable five-year statute of limitations is therefore meritless, and is DENIED.

## V.

Fifth, the defendant moves to dismiss the Superseding Indictment because the government failed to allege false and fraudulent mailings. The defendant states that since the jurisdictional mailings were required by law, the government must allege that the mailings themselves were false and fraudulent. The defendant attempts to show that the tapping charges, assessed and collected through the use of the mails, were fair and reasonable, and only applied to three of the victim's many acres of land. The defendant argues that since the charges were "fair and reasonable," they were not "improper in any way" and thus were not "false or fraudulent." Motion to Dismiss for Failure to Allege False and Fraudulent Mailings, at 4.

■ The defendant's argument fails for two reasons. First, although the defendant correctly notes that legally required mailings are not generally mailings within the statute and to allege an offense, the government must show them to be false and fraudulent,[16] the Superseding Indictment does indeed contain allegations that the mailings were fraudulent in and of themselves. Each of the mailings were part of the tapping charge scheme which was itself fraudulent. For example, the Superseding Indictment states that the tap-

ping charges consisted of a "proportional amount of the falsely inflated cost of the waterline as certified by the defendant." Superseding Indictment, at 3. Davis mailed this falsely inflated cost certification on or about May 5, 1981. The other mailings were part of the collection process of the inflated tapping charges and thus were also inherently fraudulent.[17]

■ Second, the defendant is not successful in denying that the mailings were false or fraudulent. The defendant argues that the "fair and reasonable" charges were not "improper," and thus were not "false or fraudulent," but this argument is fallacious. The defendant's syllogism slides from "fair and reasonable," to "not improper," to "not false or fraudulent" and these terms are not equivalents. To say that the victim, Richard Schultz paid a tapping charge which was within the range of "fair and reasonable" does not mean he was not defrauded.

Even assuming that Schultz paid a "fair" price, if Schultz should have been the beneficiary of tapping charges at a "bargain," "discount," or "low price," and Davis' falsely inflated cost certification raised the price to "fair" or "normal," then Davis has fraudulently deprived Schultz of the benefit of the bargain. *See United States v. Bibby*, 752 F.2d 1116 (6th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986).[18] This overstatement defrauded Schultz just as surely as would inflating the tapping charges from "normal" and "fair" to "above normal." [19]

16. *See United States v. Gray*, 790 F.2d 1290, 1298 (6th Cir.1986), *rev'd on other grounds sub nom. McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987).

17. The mailings charging Richard Schultz for fees relating to only three of many acres which he owned are no less fraudulent simply because of their limited applicability. A small fraud is no less a fraud than a big one.

18. The Sixth Circuit addressed the very argument raised by Davis and rejected it in *Bibby*. In *Bibby*, Honeywell employees skimmed money from the proceeds of a sale of a Honeywell computer to Shelby County, Tennessee. They also paid a state senator a $150,000 fee to use his influence to encourage Shelby County to make the purchase. The defendants had argued

that the sale was within Honeywell's usual range and that Shelby County paid less than a retail price. Thus, the defendants argued, there was no fraud since both buyer and seller "benefitted from a good bargain." *Id.* at 1126.

In response, the Sixth Circuit stated that the "defendant's logic is not convincing." *Id.* "The fact remains that" had the state senator not received his fees and had the employees not skimmed money from the sale, "the sales price would have been even lower." *Id.*

19. To illustrate, assume that charges stemming from an accurate cost certification would be $1400 per acre, but that a fair price is $3100. For Davis to inflate his cost statement and charge the "fair" price of $3100 deprives Schultz of $1600. This fraud harms Schultz just as

Therefore, the government successfully alleged an offense since the Superseding Indictment describes mailings which were an inherent part of the scheme to inflate the tapping charges and defraud present and future property owners in the Squirrel Bend subdivision. Even if Schultz paid a "fair and reasonable" price, Davis defrauded him of the bargain or discount he should and would have obtained, but for Davis' overstatement of the cost. The Court finds the defendant's Motion to Dismiss the Superseding Indictment for Failure to Allege False and Fraudulent Mailings to be without merit and thus is DENIED.

## VI.

■ Sixth, the defendant moves to strike surplusage from the Superseding Indictment. "The court on motion of the defendant may strike surplusage from the indictment or information." Fed.R.Crim.P. 7(d). Here, the defendant alleges that paragraph 7 in the allegations of Count I is "prejudicial, irrelevant, immaterial, non-essential, unnecessary, and inflammatory." Motion to Strike Surplusage, at 3. Paragraph 7 provides:

It was a further part of the scheme that Harold W. Hyrne, acting in his capacity as City Manager of the City of Upper Arlington, would refrain from collecting money in the form of inspection fees from the defendant, S. ROBERT DAVIS, which money was due the City of Upper Arlington in connection with the construction of the waterline in the Squirrel Bend subdivision.

The defendant subsequently requested the Court to expand his motion to include paragraph 8 of Count I. Request to Expand Motion to Strike Surplusage. Paragraph 8 provides:

It was a further part of the scheme that in consideration of Harold W. Hyrne's cooperation, acting in his capacity as City Manager of the City of Upper Arlington, Defendant S. ROBERT DAVIS would provide Hyrne with an op-

portunity to obtain valuable common stock at a cost to Hyrne substantially below its actual value.

The consideration of a Rule 7(d) motion is a matter for the Court to consider in its discretion, and is proper where "an indictment contains non-essential allegations that could prejudicially impress the jurors." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir.1974), *cert. denied* 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 824 (1975); *see* 1 Wright, *Federal Practice and Procedure* § 127, at 426 (2d ed. 1982). The showing required under Rule 7 "is a rather exacting standard, and only rarely has surplusage been ordered stricken." *Id.* at 426–27 (footnote omitted). The defendant has not broken with this pattern since he cannot demonstrate that the allegations in paragraphs 7 and 8 of Count I are not essential. They are relevant to the overall scheme.

In this case, the Superseding Indictment charges Davis with concocting a scheme to reap illicit financial gain from the construction of a waterline in the Squirrel Bend subdivision. One part of the scheme was to inflate the tapping charges and another part of the scheme was to minimize expense fees. The alleged mailings give the Court jurisdiction over the scheme as a whole. Since the alleged exchange of a stock discount for nonbilling of fees was part of the scheme, allegations describing the exchange were relevant and do not merit a motion to strike.

■ The fact that the means used to achieve the end of financial gain included the corruption of a city official does not mean that this holding runs afoul of *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). First, Davis designed both parts of the scheme to achieve the goal of achieving financial gain, not simply for depriving citizens of "intangible rights" as Davis argues, Memorandum in Support of Expansion of Scope of Motion, at 2–3. Second, as long as the *end* of the scheme is financial

much as one that caused Schultz to pay $4700 per acre if a true cost certification would give

rise to a $3100 "fair" charge.

gain, the fact that the *means* of the scheme included corruption of a public official is not fatal to the Superseding Indictment.

## VII.

The defendant also moves for an order releasing to defense counsel the transcripts of the grand jury proceedings in order to discover whether the government disclosed to the grand jury the testimony of Richard Schultz, Larry Dock, Norman Hatch, and Dr. Juan Sotos, which the defendant believes would be exculpatory. The defendant also wishes to procure the grand jury transcripts in order to determine whether the government presented the grand jury with testimony of certain defense witnesses, defense exhibits, and cross-examination testimony of Harold Hyrne. Memorandum in Support of Expansion of Scope of Motion, at 1–2 n. 1.

The defendant's motion is based on Federal Rule of Criminal Procedure 6(e)(3)(C)(ii), which provides:

> Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made ... when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.[20]

The defendant states that the government has a duty to submit to the grand jury all substantial evidence that may negate the guilt of the accused. If the government failed to present the testimony of these persons, the defendant argues, then the Court should dismiss the Superseding Indictment; had the jury known of their testimony, they might not have returned the Superseding Indictment.

The government argues first that the testimony of Schultz, Dock, Hatch, and Sotos would not be exculpatory. It states that when they testified that Davis did not defraud Schultz, they neither were aware of the false cost statement Davis allegedly submitted to Upper Arlington nor did they know of the alleged agreement between Davis and Hyrne.

Second, the government stated, the defendant's suspicion that insufficient evidence was before the jury did not rise to the level of an allegation of prosecutorial impropriety justifying dismissal. Thus, the defendant did not show sufficient grounds for justifying a breach of the veil of grand jury secrecy.

 The Supreme Court has held consistently that Rule 6(e) "requires a strong showing of particularized need for grand jury materials before any disclosure will be permitted." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983); *see Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959). This standard requires the defendant to offer some factual support, and not mere conclusory allegations, regarding the disclosure and potential grounds for a motion to dismiss the indictment. *United States v. Fife*, 573 F.2d 369, 372 (6th Cir.1976), *cert. denied sub nom. Klein v. United States*, 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977). The determination as to whether the defendant has met his burden, however, is a matter of discretion for the trial court. *United States v. Short*, 671 F.2d 178, 183 (6th Cir.), *cert. denied*, 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982).

 The Court does not believe that the defendant can successfully show a particularized need for the grand jury materials. He contends that if the prosecutor had presented to the grand jury the testimony of Schultz, Larry Dock, Norman Hatch, and Dr. Juan Sotos, there is a high probability that they might not have indicted Davis. The defendant notes in his Request to Expand Scope of Motion to Discover Certain Grand Jury Materials that the testi-

---

**20.** "In the absence of such a showing, the proceedings of a grand jury are required to be kept secret." *United States v. Fife*, 573 F.2d 369 (6th Cir.1976), *cert. denied sub nom. Klein v. United States*, 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977).

mony of other witnesses would also have been persuasive to the jury. Counsel for the defense wishes to inspect the grand jury transcripts in order to determine whether the government indeed presented their testimony. If the transcript fails to show a submission of their testimony, the defendant would move to dismiss the Superseding Indictment. This argument fails to show a particularized need for two reasons.

First, the defendant presents no factual support for his contentions that the grand jury was unaware of the trial testimony and that it would not have indicted Davis had it known of the testimony. He argues that the mere fact that these men testified in the way they did is prima facie evidence that the grand jury did not know of their statements. Such speculation does not rise to the level of "factual support" and cannot justify a breach of grand jury secrecy.[21]

■■■ Second, even if the government withheld this allegedly exculpatory evidence from the grand jury, dismissal of the Superseding Indictment would not be justified. If the defendant cannot hope to show grounds for dismissal, then the discovery of the grand jury materials would be futile and would not justify a breach of grand jury secrecy. *See* Fed.R.Crim.P. 6(e)(3)(C)(ii).

■■■ A dismissal is not warranted here since a prosecutor is under no obligation to present exculpatory evidence to the grand jury. *See, e.g., United States v. Ruyle,* 524 F.2d 1133 (6th Cir.1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1664, 48 L.Ed.2d 175 (1976). Davis contends that the courts have carved an exception from this general rule: a prosecutor has a duty present evidence if, "had the grand jury known of it, there is a high probability that they would not have indicted the defendant." Motion to Discover Certain Grand Jury Materials, at 3. The defendant, however, cannot support this proposition from any case authority within this circuit.[22]

Moreover, the defendant failed to meet its own test. Davis cannot show that the testimony of Richard Schultz, Larry Dock, Norman Hatch, and Dr. Juan Sotos would have convinced the grand jury to such a degree that there is a high probability that it would not have returned the Superseding Indictment. First, the subjective opinion of the victim Schultz that Davis did not defraud him is not convincing that Davis in fact committed no legal wrong.[23] Second, the credibility of the testimony of these witnesses is suspect since they were not aware of the agreement between Hyrne and Davis to inflate the cost certification statement. Although their testimony tends to show that Schultz paid a "fair" "tap-in"

**21.** The defendant may argue that he cannot show a particularized need to justify discovery without aid of the grand jury materials which he wishes now to discover. *See United States v. Mechanik,* 475 U.S. 66, 80, 106 S.Ct. 938, 946–47, 89 L.Ed.2d 50 (1986) (Marshall, J., dissenting). That is, the defendant cannot state that the government failed to present crucial exculpatory evidence without perusing the transcripts which he wishes to secure and showing the absence of such evidence. This circularity may be frustrating, but the law nonetheless generates such a result, and it is for this reason that motions for the disclosure of grand jury materials "are rarely granted." *Id.* The defendant rather must produce evidence available outside of the transcripts which would justify disclosure.

**22.** The defendant also argues that the government's counsel had an administrative obligation to disclose substantial exculpatory evidence to the grand jury, according to § 9–11.334 of the U.S. Attorney's manual. The Court, however,

does not find that the allegedly exculpatory evidence is "substantial." Even if it were, however, "supervision of these duties are [sic] best left to agencies other than the federal courts." *United States v. Felice,* 481 F.Supp. 79, 83 (N.D. Ohio 1978).

**23.** *Cf. United States v. Bibby,* 752 F.2d 1116 (6th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986). In *Bibby,* the defendants skimmed profits and an illegal fee from Honeywell's sale of a computer to Shelby County, Tennessee. *See supra* note 18. After rejecting the argument that the reasonableness of the purchase price is no proof that no fraud occurred, the court stated that "if Honeywell and Shelby County had known about these kickback and commissions, which were directly contrary to Honeywell policy, they would certainly have felt defrauded." *Id.* at 1126. Similarly, if Schultz had known of the inflated cost statement Davis allegedly submitted, he too might feel defrauded.

charge, their ignorance of the fact that Davis allegedly inflated the charges adversely affects their credibility when the jury considers whether Davis defrauded Schultz or not.

The defendant also requests discovery to determine whether the government presented testimony of various witnesses, defense exhibits, and cross-examination testimony of Harold Hyrne. Memorandum in Support of Expansion of Scope of Motion, at 1–2 n. 1. This evidence as well would fail to show to a high degree of probability that the jury would not have returned the Superseding Indictment. After all, a trial jury has already considered all of the allegedly exculpatory evidence and nonetheless convicted Davis.

In any case, the Court will not hear the defendant's arguments that the exculpatory evidence at the first trial was so strong that the verdict was against the weight of the evidence. The Court refuses to hold a "preliminary trial to determine the competency and the adequacy of the evidence before the grand jury." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956). The Fifth Amendment does not require such a hearing and the delay resulting from it would be substantial. *See id.* "An indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge of the merits. The Fifth Amendment requires nothing more." *Id.*

Accordingly, the Court finds the defendant's Motion to Discover Certain Grand Jury Materials to be without merit, and it is, therefore, DENIED. Furthermore, Davis' Request to Expand Scope of Motion to Discover Certain Grand Jury Materials is unwarranted and thus is DENIED.

## VIII.

The defendant also moves for a bill of particulars. The decision whether or not to "direct the filing of a bill of particulars," Fed.R.Crim.P. 7(f), is at the discretion of the Court. *See United States v. Germain*, 411 F.Supp. 719, 727 (S.D.Ohio 1975). The purpose of a bill of particulars is "to provide a defendant with specifics omitted from the indictment which are necessary for a preparation of his defense and the avoidance of surprise at trial." *Id.; see generally* 1 C. Wright, *Federal Practice and Procedure* § 129 (2d ed. 1982) [hereinafter "1 Wright"].

A bill of particulars is neither a tool for eliciting matters of an evidentiary nature, *Germain*, 411 F.Supp. at 727, nor a means of uncovering the names of government witnesses prior to trial, *United States v. Largent*, 545 F.2d 1039, 1043–44 (6th Cir.1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 546 (1977). The standard that guides the Court in consideration of a bill of particulars is whether the indictment fairly informs the defendant of the charges against him and enables him to plead an acquittal or conviction in bar of future prosecution for the same offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

The defendant seeks various particulars concerning (1) communications in which the defendant agreed to the scheme or parts thereof, (2) the inspection fees which Hyrne allegedly failed to collect, (3) the cooperation by Hyrne which allegedly served as consideration for a discount stock sale to Hyrne, (4) the allegedly inflated cost statement used to justify inflated tapping charges, (5) the assessment of allegedly inflated tapping charges, (6) the collection of these tapping charges, and (7) charges that Davis willfully and knowingly caused certain letters to be delivered by mail in furtherance of the scheme.

The Court does not believe that the government is required to specify in the Superseding Indictment all of the contents of any communications Davis made, nor must the Superseding Indictment include the evidence supporting the specific allegations of inflating the cost of the waterline and overcharging property owners using the line. Given the nature of the offense charged, the Court believes that it is sufficient to specify the time period during which the alleged scheme began and ended,

its purpose, the general overt act or acts engaged in, and the principals involved. The Court finds that the government has adequately done so.

 Moreover, the defendant's motion constitutes a request for matters of an evidentiary nature. The defendant has no right to wrest from the government a bill of particulars merely for the purpose of obtaining the government's evidence prior to trial. *See, e.g., Germain,* 411 F.Supp. at 727; 1 Wright, *supra,* § 129, 439–40 & n. 25. The defendant already has adequate notice of the charges against him. *See id.* at 443. Thus, the Court finds the defendant's motion for a bill of particulars to be without merit and it is, therefore, DENIED.

### IX.

 Finally, the defendant filed two motions in limine for the exclusion of certain evidence. First, the defendant requests that the Court issue an order barring the testimony of the defendant's former wife, Marilyn Davis, because the defendant believes that she is likely to blurt out inflammatory versions of communications that may be protected by the marital privilege.

 The defendant may invoke a marital privilege to prevent testimony as to confidential communications between married persons made during the marital relationship. *See, e.g., Blau v. United States,* 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951). The defendant is perfectly within his rights to voice an objection if the government were to seek such information at trial. To bar Marilyn Davis from testifying altogether, however, is indeed, as the government argues, excessive. Therefore, insofar as the defendant moves to prevent her from testifying, his motion is DENIED. The government states that it does not intend to seek from Marilyn Davis any testimony regarding confidential communications made during her marriage to the defendant. Thus, inasmuch as the defendant moves for exclusion of privileged testimony which the defendant expects the government to proffer, his motion is MOOT.

 The second motion in limine concerns certain prior bad acts which the defendant expects the government to use in order to impeach the defendant. The evidence in question tends to prove (1) an alleged payment which Harold Hyrne, the former city manager of Upper Arlington, claims he received from Davis in return for Hyrne's approval of a sewer tap-in for the defendant's Henderson Road subdivision; (2) the defendant's gambling activities; (3) the defendant's alleged misrepresentation of his age as being 18, which was in an effort to procure a real estate license when Davis was in fact 16; and (4) a lease which Davis supposedly signed for someone else.

Since this material is of slight probative value and may be prejudicial, the Court finds the defendant's motion to be meritorious. Fed.R.Evid. 403, 404. Insofar as the defendant seeks to exclude evidence of the four acts listed above, then, the motion is GRANTED. As far as any other prior bad acts are concerned, the Court will hear objections as the government proffers such evidence, and therefore as far as the motion relates to any other prior bad acts, aside from those listed above, the motion is DENIED.

IT IS SO ORDERED.